J-S15020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS KUILAN | : | |
| | : | |
| Appellant | : | No. 1978 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 21, 2023
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-000313-2022

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                 **FILED OCTOBER 24, 2024**

Appellant Carlos Kuilan appeals from the judgment of sentence for possession with intent to deliver (PWID) a controlled substance and related offenses.  Appellant raises challenges to the sufficiency of the evidence and the trial court's evidentiary rulings.  We affirm.

The trial court summarized the trial testimony of the Commonwealth's main witness as follows:

> [I]n November 2021, Agent James Smith, of the Pennsylvania Office of the Attorney General's Narcotics Unit, received information from a confidential informant [(CI)] that [Appellant] was selling heroin and fentanyl in Bethlehem, Northampton County.   In [November and] December 2021, Agent Smith arranged for the [CI] to make two separate controlled purchases of fentanyl from [Appellant] outside of [Appellant's] home.   On December 14, 2021, Agent Smith obtained a search warrant for [Appellant's] residence and vehicle.   After obtaining the search warrant, Agent Smith and other law enforcement officers went to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant's] residence and waited for him to exit. When [Appellant] exited his residence and began walking to his car, officers stopped and detained him. A search of [Appellant] yielded a cellphone, $651.00 in cash, and the corner end of a sandwich bag containing suspected fentanyl.

In [Appellant's] bedroom, police found $2,200.00 in cash, latex gloves, and several plastic bags. With regard to the cash, $520.00 of the money found was identified, by serial numbers, as money used by the [CI] to make the controlled purchases of fentanyl from [Appellant]. With regard to the gloves, Agent Smith testified that drug dealers often use latex gloves while packaging fentanyl because of its potency. The bags discovered in [Appellant's] bedroom were consistent with the bags used for packaging the drugs sold during the controlled purchases and were also consistent with the bag containing the suspected fentanyl found on [Appellant's] person that day.

In a back utility room of the home, police found bags containing suspected fentanyl and one bag containing a suspected cutting agent. In a living room closet, police found a Magic Bullet mixer, latex gloves, and a box of sandwich bags. Agent Smith testified that a Magic Bullet is used to grind and mix controlled substances. A digital scale was also found in a kitchen cabinet, along with a rolled-up dollar bill and a straw. In the garbage, police found sandwich bags that were missing the corners.

The suspected fentanyl was sent to the Pennsylvania State Police laboratory to be tested. The testing revealed that the bags found in the utility room contained 1.85 grams of fentanyl, and the bag found on [Appellant's] person contained [0].16 grams of heroin and fentanyl.

After being detained, Agent Smith questioned [Appellant] at the police station, where [Appellant] made several admissions. First, [Appellant] admitted that the substance found in his pocket when detained was heroin. [Appellant] also acknowledged that he sold and used heroin. He also disclosed that he had obtained fentanyl for others in the past and that, when he did, he would "pinch off" an amount to keep for himself. [Appellant] also told Agent Smith that he would put drugs in the corners of sandwich bags and cut the corners off to package them for sale.

Trial Ct. Op., 9/27/23, at 2-4 (formatting altered).

At trial, Appellant's counsel attempted to question Agent Smith about the reliability of the field test kits he used to test the substances obtained from the controlled purchases. N.T., 4/3/23, at 118-20. In response, Agent Smith denied that he was an expert on "testing for chemicals" and the trial court sustained the Commonwealth's objection to this line of questioning. *Id.* at 118.

James DiFlorio, the forensic scientist who tested the seized substances and who was qualified as an expert witness, testified that there was sufficient fentanyl in each of the items that tested positive for fentanyl that he did not have to conduct more sensitive tests. N.T., 4/4/23, at 23. The $2,200 in cash found in Appellant's jacket and the $651 in cash found on his person was mostly in the form of ten and twenty dollar bills. N.T., 4/3/23, at 55, 62, 95-98.

Detective John Casciano of the Northampton County District Attorney's Office, qualified as an expert witness in the field of narcotics investigations, trafficking, and terminology, testified that fentanyl is commonly sold in amounts of 0.01 grams packaged in small glassine bags and that an average price for a bundle of ten such bags was eighty to a hundred dollars. N.T., 4/4/23, at 33-34. He described fentanyl as "extremely potent," to the degree that "a grain of salt of fentanyl when ingested could possibly be fatal[;]" that it is common for fentanyl to be mixed with other drugs such as heroin or an inert substance, such as the "large quantity of a non-controlled substance" seized during the search, to "make your supply go further[;]" and that the

seized fentanyl could be divided into one hundred bags for sale, prior to adding a cutting agent. *Id.* at 30-31, 34-35. He also testified that retail, or smaller scale, drug traffickers typically have amounts of cash in "small denominations, tens and twenties" in their room or on their person. *Id.* at 35-36. Based on the items found in Appellant's residence, Detective Casciano opined that "[Appellant] was using [his residence] for the possession with the intent to deliver, so he was selling it, the fentanyl." *Id.* at 40.

Appellant's sister, Dyealee Deaza, who shared the residence with Appellant, had admitted to using fentanyl and pled guilty to possession of fentanyl, specifically the 0.07 grams seized from her bedroom. N.T., 4/3/23, at 67, 99-100, 110-11. Agent Smith explained that the target of this investigation, however, had not been Ms. Deaza as the CI had identified Appellant as selling fentanyl. *Id.* at 99-100. Ms. Deaza testified that the back utility room had been used by her wife; that the purses in the back room had belonged to her wife; and that the purses had been untouched since her wife had passed away and that no one was allowed in that room. N.T., 4/4/23, at 73-78. Agent Smith described this room as containing "a table with makeup, had purses. There might have been like mops, cleaning stuff []. Just a utility room[,]" with purses on the heat register. N.T., 4/3/23, at 68-69.

Appellant's mother, Alexa Kuilan, testified that Ms. Deaza, her daughter, did not have a job and therefore Ms. Kuilan suspected her of selling drugs to afford rent. N.T., 4/4/23, at 56-61. Ms. Kuilan testified to observing in Ms. Deaza's bedroom a white substance lined up on the dresser, with a straw next

to it, and she believed Ms. Deaza was using "dope" and "hustling," *i.e.*, selling drugs, and that Ms. Kuilan did not want Appellant to live with Ms. Deaza because she was afraid Appellant would get caught up in Ms. Deaza's "hustling." ***Id.*** at 60-61, 66-67. Appellant did not testify.

Prior to trial, the trial court granted the Commonwealth's motion *in limine* seeking to admit evidence of the controlled purchases by the CI. The trial court issued this related cautionary instruction to the jury:

> This evidence is before you for a limited purpose . . . of tending to establish by circumstantial evidence that [Appellant] possessed the fentanyl charged . . . with the intent to deliver it to another[, and that it] must not be considered by you in any way other than for th[is] purpose[.] You must not regard the evidence as showing that the [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T., 4/4/23, at 123-24.

On April 4, 2023, the jury found Appellant guilty of possession with intent to deliver fentanyl, possession of fentanyl, and possession of drug paraphernalia.[1] On June 21, 2023, the trial court sentenced Appellant to an aggregate term of 90 to 180 months' incarceration.

Appellant filed a timely notice of appeal and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises the following issues on appeal:

> 1. Was the evidence insufficient to support a conviction of pos[s]ession with intent to distribute fentanyl?

_____

[1] 35 P.S. §§ 780-113(a)(16), (a)(30), and (a)(32), respectively.

- 5 -

2. Did the [trial court] err in denying [Appellant]'s motion *in limine* to exclude prior bad acts of controlled purchases from November and December 2021[?]

3. Did the [trial court] err in denying [Appellant] the ability to cross examine Agent James Smith on the reliability of NIK narcotics tests kits?

Appellant's Brief at 6 (some formatting altered).

## Sufficiency of the Evidence

In his first issue, Appellant challenges the sufficiency of the evidence supporting his PWID conviction. *Id.* at 11. Specifically, Appellant argues that although the Commonwealth established that he possessed a mixture of heroin and fentanyl, the evidence "does not rise beyond a reasonable doubt that the Appellant intended to possess fentanyl and sell it." *Id.* at 12. In support, Appellant contends that there was no determination concerning the amount of fentanyl recovered from his person or whether that fentanyl was from "traces from being used on one of the scales in the house which [] had traces of fentanyl and/or white substance on them." *Id.* Additionally, Appellant contends that he did not constructively possess "the other weights of fentanyl discovered in the apartment," because he shared this apartment with his sister and the fentanyl was "discovered in the purse in the back room of the Appellant's apartment, an area reserved for the belongings of [Appellant's sister's] wife, who had died of a fentanyl overdose and had been a fentanyl seller and user." *Id.* at 11.

Our standard of review for challenges to the sufficiency of the evidence is as follows:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

***Commonwealth v. Palmer***, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and some formatting altered).

The Controlled Substance, Drug, Device and Cosmetic Act defines PWID as follows:

§ 780-113. Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

Further, this Court has noted:

The statute defining the offense of possession with intent to deliver proscribes delivery of a controlled substance. 18 P.S. 780-113(a)(3). The provision itself does not designate the controlled substance. In other words, **the specific identity of the controlled substance is not an element of the offense**. The identity is only relevant for gradation and penalties based on the relevant schedule. 18 P.S. § 780-104. Specifically, heroin is a Schedule I substance, 18 P.S. § 780-104 (1)(ii)(10); Fentanyl is a schedule II substance, 18 P.S. § 780-104(2)(ii)(6). Section 780-113(f)(1) provides the following with regard to a violation of Section (a)(30) resulting from PWID of schedule I or II controlled substances:

> (f) Any person who violates clause (12), (14) or (30) of subsection (a) with respect to:
>
> > (1) A controlled substance or counterfeit substance classified in Schedule I or II which is a narcotic drug, is guilty of a felony and upon conviction thereof shall be sentenced to imprisonment not exceeding fifteen years, or to pay a fine not exceeding two hundred fifty thousand dollars ($250,000), or both or such larger amount as is sufficient to exhaust the assets utilized in and the profits obtained from the illegal activity.

35 P.S. § 780-113(f)(1) (internal footnote omitted).

*Commonwealth v. Beatty*, 227 A.3d 1277, 1285 (Pa. Super. 2020) (emphasis added).

Possession can be established "by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa. Super. 2018) (citation omitted). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) (citation omitted). This Court has explained that:

Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances. It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

**Parrish**, 191 A.3d at 36-37 (citations omitted and formatting altered).

Further, when evaluating circumstantial evidence of a defendant's intent to deliver a controlled substance, our Supreme Court has explained:

[I]f the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.

Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and large sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

**Commonwealth v. Ratsamy**, 934 A.2d 1233, 1237-38 (Pa. 2007) (citation omitted and some formatting altered).

Here, the trial court concluded that there was sufficient evidence to support Appellant's conviction for PWID. **See** Trial Ct. Op. at 2-5. Relevantly, the Commonwealth presented evidence that Appellant had more than $2,200

in cash in mostly ten and twenty dollar bills, of which $520 was prerecorded money used in the controlled purchases. *See* N.T., 4/3/23, at 65, 95-98. Appellant identified the corner tie found on his person as heroin, while the lab test results identified it as heroin and fentanyl; and Appellant admitted selling fentanyl in the past and that he could obtain fentanyl in the present. *Id.* at 79, 93-94. The items seized from common areas of the residence included, *inter alia*, a suspected cutting agent; a baggie containing 1.85 grams of fentanyl from the back utility room, which had an estimated street value of $80 to $100 per bundle of ten 0.01 gram bags, for a total value of $1,480 to $1,850; a digital scale next to a rolled up dollar bill; and a bag containing a Magic Bullet grinder bundled with latex gloves and plastic sandwich bags. *Id.* at 68-71, 74-75, 79, 85. Further, the police found a baggie containing 0.07 grams of heroin and fentanyl in Appellant's sister's bedroom. *Id.* at 67, 79.

Viewing the evidence in the light most favorable to the Commonwealth, we agree with the trial court that there was sufficient evidence to support Appellant's conviction for PWID. *See Beatty*, 227 A.3d at 1283; *see also Ratsamy*, 934 A.2d at 1237-38. On this record, there was competent evidence that the back utility room was an area of equal access to residents of the apartment, including Appellant, and fentanyl was recovered from that area. *See* N.T., 4/3/23 at 69-71; *see also Parrish*, 191 A.3d at 36. Accordingly, the jury was free to credit the testimony from the Commonwealth's witnesses and conclude that Appellant constructively possessed the fentanyl found in the back utility room, a common area of the

- 10 -

shared home. *See Parrish*, 191 A.3d at 36; *see also Ratsamy*, 934 A.2d at 1237-38. Therefore, Appellant is not entitled to relief on this claim.

**Prior Bad Acts Evidence**

Appellant next claims that the prejudicial effect from the evidence of the controlled purchases outweighed its probative value and should have been excluded "because of a fear that such evidence is so powerful that the jury might misuse the evidence and convict based solely upon criminal propensity." Appellant's Brief at 12-13. Appellant argues that evidence of other crimes or prior bad acts, such as the controlled purchases, is only admissible "if there is ground to believe that the crime charged **grew out of it**" and that there must be "'a relationship between the 'other crime' and the crime pleaded[.]" *Id.* at 13 (citations omitted and emphasis in original).

We review a trial court's evidentiary rulings for an abuse of discretion. *See Commonwealth v. Thompson*, 314 A.3d 922, 926 (Pa. Super. 2024). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted).

Evidence of other crimes or prior bad acts is governed by Rule of Evidence 404(b), which prohibits the admission of evidence of "any other crime, wrong, or act" if offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the

- 11 -

character." Pa.R.E. 404(b)(1). Rule of Evidence 403 directs that relevant evidence should be excluded "if its probative value is outweighed by a danger of . . . unfair prejudice[.]" Pa.R.E. 403. The comment to Rule 403 defines unfair prejudice as "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, cmt.

However, evidence of prior bad acts is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, . . . if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). In addition to the enumerated exceptions in Rule 404(b)(2), "our Supreme Court previously recognized another exception . . . referred to as the *res gestae* exception." **Commonwealth v. Knupp**, 290 A.3d 759, 771 (Pa. Super. 2023) (citing **Commonwealth v. Lark**, 543 A.2d 491, 497 (Pa. 1988)). "Pursuant to **Lark**, evidence of other crimes and acts is admissible to enable the Commonwealth to tell the complete story of the crime by providing its immediate context of happenings near in time and place." **Id.** (citation omitted, formatting altered).

In **Knupp**, the controlled purchases occurred less than sixty days before the police executed a search warrant on the defendant's barbershop, which was geographically close to the site of suspected drug sales. **Id.** at 773. The **Knupp** Court held that evidence of the controlled purchases was properly admitted because the trial court instructed the jury that it could only consider

that evidence for the limited purpose of showing the defendant's "possession of and intention to deliver cocaine" and "must not be considered by you in any other manner[,]" nor regarded "as showing that the defendant is a person of bad character or criminal tendencies, from which you might be inclined to infer guilt." *Id.* at 771-72 and n.6. The **Knupp** Court further noted that "all Commonwealth evidence in a criminal proceeding is generally prejudicial to the defendant, but relevant evidence is to be excluded only when it is unfairly prejudicial[,]" and that "[a] trial court is not required to sanitize a trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which a defendant is charged[.]" *Id.* at 772 (citations omitted).

Furthermore, if a party objected to the admission of evidence, the trial court denied the objection, and the objecting party acceded to the trial court's limiting or cautionary instruction to the jury, that party has waived that objection for appeal. *See, e.g.*, **Commonwealth v. Colon**, 846 A.2d 747, 752-53 (Pa. Super. 2004); *but see **Commonwealth v. Stokes***, 78 A.3d 644, 653 (Pa. Super. 2013) (holding that the defendant's filing of a motion *in limine* to exclude evidence preserved the issue for appeal, because although the defendant "did not expressly object" when the trial court denied his motion, "neither did he consent or agree to the ruling").

Here, the trial court concluded that evidence of the controlled purchases was admissible to prove Appellant's knowledge and intent. **See** Trial Ct. Op. at 5. Based on our review of the record, we agree. The controlled purchases

in the instant case occurred in Bethlehem within seventeen days of the execution of the search warrant, and the information obtained from these controlled purchases formed the probable cause for the search. **See** N.T., 4/3/23, at 45-52. As such, there was a clear relationship between the controlled purchases and the PWID charge. Without information about the controlled purchases the jury lacked the "immediate context of happenings near in time and place" to show why Agent Smith applied for the search warrant. **See Knupp**, 290 A.3d at 771. Appellant did not continue to object to the introduction of this evidence at trial. Further, without objection from Appellant, the trial court instructed the jury to consider this evidence for the limited purpose of determining if Appellant had the intent to deliver fentanyl to another person, and not to find that Appellant was a person of bad character or had criminal tendencies. **See** N.T., 4/4/23, at 123-24. This cautionary instruction ameliorated or cured the risk of unfair prejudice. **See Knupp**, 290 A.3d at 773 (explaining that the prejudicial effect of testimony concerning prior controlled drug sales was cured by a cautionary instruction and noting that the jury is presumed to follow the trial court's instructions); **see also Commonwealth v. Jones**, 668 A.2d 491, 503-04 (Pa. 1995) ("our law presumes that juries follow the court's instructions as to the applicable law"). Accordingly, the trial court did not abuse its discretion in admitting evidence of the controlled purchases and Appellant is not entitled to relief on this claim. **See Thompson**, 314 A.3d at 926; **Santos**, 176 A.3d at 882.

## Cross-Examination

Finally, Appellant claims that the trial court erred by barring trial counsel from cross-examining Agent Smith about the reliability of the NIK field test kits. Appellant's Brief at 17-20. Appellant contends that "[t]his evidence was not only used to substantiate the search warrant but was used as the primary evidence to establish [] Appellant's intent and knowledge regarding the nature of the controlled substances being sold, namely that it was fentanyl, not heroin[]." *Id.* at 20. Therefore, Appellant argues that trial counsel should have been permitted to cross-examine Agent Smith regarding the limitations of the field tests and the limitations of Agent Smith's knowledge regarding the NIK field tests and their reliability. *Id.* at 19-20.

"The scope of cross-examination is within the trial court's discretion, and this Court cannot disturb the trial court's determinations absent a clear abuse of discretion or an error of law." *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011) (citation omitted); *see also Thompson*, 314 A.3d at 926. "Evidence is relevant if . . . the fact is of consequence in determining the action." Pa.R.E. 401(b).

Here, the trial court addressed Appellant's claim as follows:

[] Agent Smith was not offered as an expert witness by the Commonwealth and did not testify as to the reliability of NIK Narcotic Test Kits during his direct examination. For this reason, the [trial] court was well within its discretion to preclude defense counsel from cross-examining him as if he were an expert witness who had testified regarding the reliability of those tests.

Moreover, evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. In this case, the reliability of the field

- 15 -

testing done in relation to the controlled purchases was not of consequence for the following reasons. Those tests formed the basis for obtaining the search warrant. This was not a pretrial hearing challenging the search warrant, it was the trial. At trial, the Commonwealth did not charge [Appellant] in relation to the controlled purchases but, rather, charged him with the fentanyl found as result of executing the search warrant. The controlled substances that [Appellant] was charged with possessing were tested by the Pennsylvania State Police Crime Laboratory. The testimony of the expert who tested the substances and his report were offered into evidence to establish that the substances were, in fact, fentanyl.

Trial Ct. Op. at 6-7.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Ramtahal*, 33 A.3d at 609. Appellant was charged with PWID based on the fentanyl seized from his residence, not the prior controlled purchases. *See* Trial Ct. Op. at 7. Agent Smith did not testify as to the reliability of NIK field test kits during his direct examination, and the results of the field tests were only relevant to provide context for why and how Agent Smith procured the search warrant that led to the discovery of fentanyl in Appellant's residence and on his person. *See id.* We conclude that the reliability of the NIK field tests was not a fact "of consequence" in Appellant's PWID conviction and did not undermine the reliability of the evidence that the jury could consider to find the elements of PWID, and therefore the trial court did not abuse its discretion in sustaining the Commonwealth's objection to this line of questioning. *See Ramtahal*, 33 A.3d at 609; *see also* Pa.R.E. 401(b); *Thompson*, 314 A.3d at 926. Further, the Commonwealth presented James DiFlorio, a forensic scientist, and Detective John Casciano, who were qualified

as expert witnesses. Mr. DiFlorio testified as to his methodology for testing the seized substances that tested positive for fentanyl. Detective Casciano was qualified as an expert in the field of narcotics investigations, trafficking and terminology, and opined that Appellant was using his residence for the possession with the intent to deliver fentanyl. Accordingly, there was overwhelming evidence to support Appellant's PWID conviction. Therefore, Appellant is not entitled to relief on this last claim. For these reasons, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/24/2024