J-A09027-24

2024 PA Super 85

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAQUAN LAMONT THOMPSON | : | |
| | : | |
| Appellant | : | No. 1432 WDA 2022 |

Appeal from the Judgment of Sentence Entered November 3, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013629-2018

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

OPINION BY KUNSELMAN, J.:                      **FILED: April 25, 2024**

Daquan Lamont Thompson appeals from the judgment of sentence entered after he was convicted of homicide by vehicle while driving under the influence and other crimes.[1]  He challenges the prosecution's use of evidence from the event data recorders (EDRs) in the cars in the crash.  We affirm.

On October 28, 2017, Thompson was in a deadly car crash on Shady Avenue in Pittsburgh.  The driver of the other car was John Barsom.  Initially, Thompson denied that he had been driving.  After investigation, however, Thompson was charged, and the case proceeded to a non-jury trial.  Relevant

_____

[1] 75 Pa.C.S.A. §§ 3735(a), 3732(a) (homicide by vehicle), 3735.1(a) (aggravated assault by vehicle while driving under the influence, 3 counts), 3732.1(a) (aggravated assault by vehicle, 3 counts), 3742.1(a) (accidents involving death or personal injury while not properly licensed), 3802(c) (driving under the influence (DUI), highest rate of alcohol), 3802(a)(1) (DUI, general impairment), 3736(a) (reckless driving), 1501(a) (driving without a license), and 3361 (driving at safe speed).

to this appeal, the Commonwealth presented City of Pittsburgh Police Officer Ronald Wolfe. Officer Wolfe responded to the scene of the crash and testified as an expert in accident or crash reconstruction. Over Thompson's objection, Officer Wolfe described his extraction and use of EDR data from Thompson and Barsom's cars. As the trial court explained:

> Officer Wolfe inventoried the damage and performed a mechanical inspection of both vehicles and found no mechanical issues. From this, he concluded that neither car had any mechanically contributing factors related to the Oct. 28, 2017 crash. Additionally, [both] cars were equipped with [EDRs]. As explained by Officer Wolfe, an EDR is installed by the manufacturer and is activated when the car is turned on which triggers it to make continuous five second recording loops of information received from the vehicle, such as, but not limited to wheel speed, transmission speed, and engine rpms. This information is used [for the vehicle] to determine the need for deployment of seat belt [pretensioners], and/or frontal, side, or curtain airbags. This triggering/deployment event also changes the recording feature of the device, such that it does not overwrite the information, but locks it into the system [after] which it cannot be altered.
>
> In this case, the EDR device and data were successfully retrieved from [the] respective cars. [Generally, t]his data help[ed] form Officer Wolfe's overall opinion regarding the nature of [the] accident, but he [did] not rely on [EDR data] blindly, explaining that he compares the data with physical observations and examination of the accident scene to assure there is correlation. In this case the EDR data from Barsom's vehicle revealed that he was wearing a seatbelt and traveling 33 mph five seconds prior to the impact. The vehicle was neither accelerating nor decelerating immediately prior to the brakes being engaged and the data was consistent with a frontal impact observed. The EDR data from [Thompson's] vehicle recorded both a non-deployment and a deployment event 2/10 of a second apart, which indicates that both events occurred during the same incident. Relating this back to the accident scene, it indicates that after [Thompson's] vehicle struck Barsom's vehicle (the deployment event), it then struck a parked vehicle (the non-deployment event) before coming to rest against the telephone

pole in the yard of 1215 Shady Ave. Five seconds prior to the crash[, Thompson's] vehicle was traveling 60 mph and 2 seconds before impact the speed had reduced to 47 mph and the brakes were never engaged. The EDR data revealed that neither front seat occupant [in Thompson's car] was wearing a seatbelt which was consistent with the physical evidence.

Trial Court Opinion, 4/5/23, at 7–8 (record citations omitted, paragraph break and parentheses added). From his analysis, Officer Wolfe concluded that Thompson caused the crash, which killed one passenger and injured the other three occupants of Barsom's vehicle. The trial court found Thompson guilty of the above crimes.

On November 3, 2022, the trial court sentenced Thompson to an aggregate term of 5½ to 11 years of confinement. Thompson timely appealed on December 5, 2022.[2] Thompson complied with Pennsylvania Rule of Appellate Procedure 1925(b). The trial court filed a Rule 1925(a) opinion in support of its order on April 5, 2023.

Thompson presents one issue for review:

Did the trial court err by admitting the evidence about information from the event data recorder (EDR) in this matter because there was no evidence presented that the EDR was accurate and because Mr. Thompson was unable to cross-examine the device, in violation of **Crawford v. Washington**, 541 U.S. 36 (2004), **Melendez–Diaz v. Massachusetts**, 557 U.S. 305 (2009), and **Commonwealth v.** [**Barton–Martin**], 5 A.3d 363 (Pa. Super. 2010)?

Thompson's Brief at 6.

---

[2] Thompson's notice of appeal, filed the Monday after Saturday, December 3, 2022, was timely. **See** 1 Pa.C.S.A. § 1908, Pa.R.A.P. 107.

This Court reviews a trial court's evidentiary rulings for an abuse of discretion. ***Commonwealth v. Lang***, 275 A.3d 1072, 1077–78 (Pa. Super. 2022). We review legal questions—such as whether the admission of evidence violates the Confrontation Clause—under a *de novo* standard. ***See Commonwealth v. Weeden***, 304 A.3d 333, 339 n.11 (Pa. 2023).

The United States and Pennsylvania Constitutions protect the right of each criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI; Pa. Const. Art. I § 9.[3] The Supreme Court explained the focus of the Confrontation Clause:

> It applies to "witnesses" against the accused—in other words, those who "bear testimony." "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."

***Crawford***, 541 U.S. at 51 (dictionary citations omitted). The ***Crawford*** Court held that the Confrontation Clause prohibits admission of "testimonial" hearsay unless the defendant had a prior opportunity to cross-examine the witness who made the statement (and the witness is unavailable at trial). ***Id.*** at 68–69.

The Supreme Court clarified that a statement is "testimonial" if it is the "functional equivalent" of *ex parte* in-court testimony, "formalized testimonial materials," or made under circumstances that would lead an objective witness to believe that the statement would be available for use at a later trial. ***Id.***

---

[3] Thompson does not argue that the Pennsylvania provision provides greater protections than its federal counterpart. ***See Commonwealth v. Edmunds***, 586 A.2d 887, 895 (Pa. 1991).

at 51–52. In making the latter determination, we can consider a statute providing that the statement is to be used for an evidentiary purpose. **See Melendez–Diaz**, 557 U.S. at 310. Likewise, statements given to police are testimonial if there is no ongoing emergency and the primary purpose of police questioning "is to establish or prove past events potentially relevant to later criminal prosecution." **Davis v. Washington**, 547 U.S. 813, 822 (2006).

Statements in reports may be testimonial depending on their purpose. For example, in a DUI prosecution, a toxicology report that identifies the alcohol content of the defendant's blood is testimonial. **Commonwealth v. Yohe**, 79 A.3d 520, 554–55 (Pa. 2013). It violates the Confrontation Clause to admit a toxicology report with the testimony of the custodian of records but not the laboratory technician who performed the test. **Barton–Martin**, 5 A.3d at 368. Similarly, an autopsy report—designed to determine whether a death occurred as a result of a criminal act, written in consultation with the district attorney—is testimonial. **Commonwealth v. Brown**, 185 A.3d 316, 329 (Pa. 2018).

By contrast, statements in reports are not testimonial if their purpose is not to prove an element of a crime. Thus, certificates of calibration and accuracy for a breath alcohol-testing device are not testimonial. **Commonwealth v. Dyarman**, 73 A.3d 565, 569 (Pa. 2013). Those certificates do not establish any element of DUI and are "not prepared for the primary purpose of providing evidence in a criminal case." **Id.** Likewise, a summary added to a gunshot detection system report is not testimonial

- 5 -

because its primary purpose is to help police respond to an emergency, not to serve as proof at trial. **Weeden**, 304 A.3d at 352–53.

Here, Thompson argues that the EDRs provided testimonial data. He quotes the applicable federal regulation and claims that EDR reports are made for the purpose of litigation:

> The purpose of this part is to help ensure that EDRs record, in a readily usable manner, data valuable for effective crash investigations and for analysis of safety equipment performance (e.g., advanced restraint systems). These data will help provide a better understanding of the circumstances in which crashes and injuries occur and will lead to safer vehicle designs.

49 C.F.R. § 563.2.

Thompson protests that the Commonwealth presented no witness to explain how an EDR functioned or was calibrated or tested. Because he could not cross-examine anyone who could explain how the EDR evidence was created, Thompson contends that the admission of EDR data in this case violated his rights under the Confrontation Clause.

We conclude that the EDR reports here are not testimonial statements, because of the data they contained and because of the nature of an EDR itself. First, the reports are not the functional equivalent of in-court testimony. The product of an EDR is nothing like a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." **Crawford**, 541 U.S. at 51. Second, EDR reports are a product of real-time processes that a vehicle uses to control its airbag and seatbelt systems. Like a statement to police about an "ongoing emergency," EDR information is used primarily for a more

immediate purpose than preparing for future litigation. ***Davis***, 547 U.S. at 822; ***Weeden***, 304 A.3d at 352–53. Third, the facts that EDR data can establish are distinct from elements of a crime.[4] The data from an EDR, like wheel speed, transmission speed, and engine rotations per minute, would require significant analysis and inference to prove an element of any offense here. This stands in contrast to a toxicology report that states the alcohol content of the blood of a DUI defendant, ***Yohe***, 79 A.3d at 554–55, or an autopsy report that concludes a victim died from homicide, ***Brown***, 185 A.3d at 329. These factors all point in the same direction: statements in an EDR report are not testimonial.

More fundamentally, however, EDR data cannot be testimonial because an EDR cannot be a "witness" within the meaning of the Confrontation Clause. Testimonial hearsay **is** admissible if the witness who made the statement is unavailable and the defendant had a prior opportunity to cross-examine the witness. ***See Crawford***, 541 U.S. at 68–69. But one cannot cross-examine a machine. ***Commonwealth v. Wallace***, 289 A.3d 894, 907 (Pa. 2023). Like other courts to consider this issue, we read the Confrontation Clause to apply to "statements of human witnesses" and not data from a machine like an EDR. ***State v. Ziegler***, 855 N.W.2d 551, 556 (Minn. Ct. App. 2014).

---

[4] The notable exception is speeding. As the parties have not briefed whether EDR data can provide sufficient evidence under Pennsylvania law on proof of speeding, we express no opinion on this separate, statutory issue. ***See*** 75 Pa.C.S.A. § 3368 (Speed timing devices).

As applied, we find no violation of the Confrontation Clause. Officer Wolfe testified to his use of EDR data. He was not merely a custodian of the records that he extracted but also the person who analyzed the data to reach a conclusion. *See Barton–Martin*, 5 A.3d at 368. Officer Wolfe was available for cross-examination about the EDR data, and Thompson cross-examined Officer Wolfe. Therefore, the Commonwealth did not violate Thompson's confrontation rights, and the trial court did not abuse its discretion by accepting evidence of EDR data in this case.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/25/2024