J-A22019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONTEZ FREEMAN | : | |
| | : | |
| Appellant | : | No. 904 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 24, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007118-2020

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONTEZ FREEMAN | : | |
| | : | |
| Appellant | : | No. 905 WDA 2023 |

Appeal from the Judgment of Sentence Entered June 14, 2023
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007117-2020

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED: January 8, 2025**

Montez Freeman appeals from the judgment of sentence entered following his convictions for third-degree murder and aggravated assault.[1] He challenges the admission of evidence. We affirm.

---

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1), respectively.

The Commonwealth charged Freeman with multiple offenses including aggravated assault and third-degree murder for the killing of Clinton Miller. Relevant to this appeal, on the first day of trial, the Commonwealth presented testimony from the victim's girlfriend, Tasha Lomax. N.T., Jury Trial Day 1, 3/7/23, at 33-34. When asked about what occurred on the day of the murder, Lomax repeatedly said that she did not remember what happened. *Id.* at 35, 42. Lomax agreed that following the murder, she gave a statement to Detective George Satler but did not remember the specifics of what she told him. *Id.* at 43, 44-48. The court asked Lomax, "[I]s it that you don't remember today telling Detective Satler what [the Commonwealth] is referring to? Or you don't remember telling him on that day?" *Id.* at 48. Lomax said, "I don't remember telling him." *Id.* The court asked, "Today, sitting here, do you remember or not?" *Id.* Lomax responded, "No." *Id.* She explained that she remembered speaking with Detective Satler but did not "remember about like a lot of things." *Id.*

The parties and court then went to sidebar and the Commonwealth asked to admit Lomax's video-recorded interview with Detective Satler, pursuant to Pa.R.E. 803.1(4). *Id.* at 51-58. The prosecutor stated on the record that he was offering Lomax for cross-examination, since she was available, but would play the video during Detective Satler's testimony. *Id.* at 56. The court determined that Lomax was not credible and permitted the admission of the video, over counsel's objection. *Id.* at 58. The Commonwealth did not play the video at that time.

Defense counsel then cross-examined Lomax. He asked her about her apartment building and about a conversation she had had with Detective Satler. *Id.* at 61-65. He did not ask her about her recorded interview.

On the second day of trial, defense counsel objected that the admission of the video would violate the Confrontation Clause. N.T., Jury Trial Day 2, 3/8/23, at 10. He argued that the interview was testimonial in nature since Lomax "undoubtedly knew it was for law enforcement purposes and that it would likely be used in a court case later." *Id.* He further claimed that the admission of the video "without the right to cross-examine violates my client's confrontation clause rights" and that when Lomax gave her statement "no one was there on behalf of the defense to cross-examine her." *Id.* at 10, 11. The court denied counsel's request. It noted that Lomax had been "ready, willing and able to be cross-examined" the day before and that counsel "had the transcript and the copy of the video so he knew what she had said or has said in a prior interview." *Id.* at 12.

The Commonwealth then presented the testimony of Detective Satler. He testified that his interview of Lomax was audio- and video-recorded. *Id.* at 109. The Commonwealth then played the video for the jury. *Id.* at 113.[2]

Following trial, the jury convicted Freeman of aggravated assault and third-degree murder. The court originally sentenced Freeman in June 2023 to consecutive terms of eight to 16 years' incarceration for aggravated assault

---

[2] The video was played a second time for the jury on Day 3 due to audio issues. N.T., Day 2, at 119; N.T., Jury Trial Day 3, 3/9/23, at 11.

at Docket 7117 and 16 to 20 years' incarceration for third-degree murder at Docket 7118. On June 26, Freeman filed timely post-sentence motions for both dockets. On July 13, Freeman filed a motion to withdraw his post sentence motion at Docket 7117. The court granted the motion on July 18. On July 24, the court granted Freeman's post-sentence motion at Docket 7118 and resentenced him to a consecutive term of 16 to 32 years' incarceration for third-degree murder. Freeman filed timely notices of appeal at both dockets on August 3. *See* Pa.R.Crim.P. 720(A)(2)(c) (stating defendant has 30 days to file a timely appeal upon "entry of the order memorializing" the withdrawal of the defendant's post-sentence motion).

Freeman raises the following issue:

1. Whether the trial court abused its discretion when it permitted the Commonwealth to play a video-recorded interview by the sole eyewitness, Tasha Lomax, to the jury and be admitted as substantive evidence, when the witness testified at trial that she could not remember anything she had said in the recorded interview, in violation of the Confrontation Clause under provisions of the United States and Pennsylvania Constitutions?

Freeman's Br. at 6 (answer of trial court omitted).

We review the admission of evidence for an abuse of discretion. *Commonwealth v. Thompson*, 314 A.3d 922, 926 (Pa.Super. 2024). "However, whether a defendant has been denied his right to confront a witness . . . is a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *In re N.C.*, 105 A.3d 1199, 1210 (Pa. 2014).

- 4 -

Freeman maintains that his Confrontation Clause rights were violated because he did not have an "opportunity to cross-examine the only eyewitness and lynchpin to the case." Freeman's Br. at 13. He points out that Lomax testified that she did not remember the specifics of her recorded interview and that the court found her "incredible and unavailable." *Id.* at 14. While Freeman acknowledges that "trial counsel was given permission to cross-examine [Lomax]," he argues that "[a] witness that is unavailable means that the witness is unable to be cross-examined." *Id.* at 18. Freeman claims that ***Crawford v. Washington***, 541 U.S. 36 (2004), is "pertinent to the present issue" and "[t]he Confrontation Clause trumps any rule of evidence." *Id.* at 22 (citing ***Crawford***).

The United States and Pennsylvania Constitutions provide that in all criminal prosecutions, the accused has a right "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.; Pa. Const. art. I, § 9. The admission of testimonial evidence from an unavailable witness, where the defendant did not have a prior opportunity to cross-examine the witness, violates the Confrontation Clause. ***See Crawford***, 541 U.S. at 68.

In ***Crawford***, the United States Supreme Court provided clarity regarding what amounts to a violation of a defendant's Confrontation Clause rights. The Court determined that "testimonial" statements are inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Id.* The Court explained that testimonial evidence includes "prior testimony at a preliminary hearing, before a grand

jury, or at a former trial[,] and . . . police interrogations." **Id.** However, the **Crawford** Court added that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his[/her] prior testimonial statements." **Id.** at 59 n.9. In other words, "[t]he Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." **Id.**

Here, Lomax's recorded interview with police was testimonial. **See id.** at 68. Thus, the question becomes whether the Confrontation Clause barred admission of the statement. We conclude that it did not. Lomax was at trial and available for cross-examination. Indeed, defense counsel cross-examined her. Though Freeman claims that the court deemed Lomax as "unavailable," the record belies this claim. While there was a discussion between the parties and the court regarding Lomax's unavailability, the court did not make a finding that Lomax was unavailable. **See** N.T., Day 1, at 40 (defense counsel stating that "unavailability has to be based on the finding that the judge believes that her inability to remember is not genuine"), 57 (prosecutor stating, "The way the rule [803.1(4)(c)] works is she's deemed unavailable"), 58 (court finding Lomax "not credible"); Rule 1925(a) Opinion, filed 4/16/24, at 6 ("Lomax was live and present in the courtroom"); **Commonwealth v. Einhorn**, 911 A.2d 960, 972 (Pa.Super. 2006). In any event, Lomax was present at trial and able to be cross-examined. There was no Confrontation Clause violation. **See Crawford**, 541 U.S. at 59 n.9.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/08/2025