J-S29005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                    PENNSYLVANIA
:
v.                                  :
:
:
KYLE MICHAEL JONES                  :
:
Appellant         :       No. 1131 WDA 2024

Appeal from the Judgment of Sentence Entered March 22, 2024
In the Court of Common Pleas of Beaver County Criminal Division at
No(s):  CP-04-CR-0000702-2023

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:                 **FILED: December 31, 2025**

Appellant Kyle Michael Jones appeals from the judgment of sentence imposed following his conviction for carrying a firearm without a license.[1] Appellant challenges the sufficiency and weight of the evidence and several of the trial court's evidentiary rulings.  We affirm.

The trial court summarized the underlying facts of this matter as follows:

On March 4, 2023, at approximately 10:44 PM, Patrolman Jeremy Conley of the New Brighton Area Police Department responded to a call regarding a disturbance at [an apartment complex located on] 5th Avenue [in] New Brighton, Pennsylvania[.]  The caller advised that [Appellant] was in possession of a firearm and was sitting in a vehicle in the parking lot of the apartment building.

Upon his arrival, Officer Conley observed a Dodge Stratus [vehicle] in front of the apartment building.  Officer Conley identified the occupants of the vehicle as [Appellant] and Cheyenne Ambrose [(Cheyenne)], his girlfriend.  After some struggle between the responding officers and [Appellant],

---

[1] 18 Pa.C.S. § 6106(a)(1).

[Appellant] was placed in police custody. Officer Keith Smith was also present on scene. After [Appellant] was detained, Officer Smith began searching for the firearm. After looking under several vehicles in the parking lot, he discovered a purse under a vehicle near the Stratus. In this purse, Officer Smith discovered a 9-millimeter Smith & Wesson handgun that was loaded with a live round. A criminal history check that occurred after [Appellant] was detained showed that [Appellant] is prohibited from possessing a firearm as a result of a felony conviction under the Controlled Substance, Drug, Device and Cosmetic Act.

Officer Conley then interviewed Kyla Ambrose [(Kyla)], the caller, who explained that Cheyenne [] is her sister, and that Kyla [] was caring for K.A., Cheyenne['s] minor child. She explained that [upon] Cheyenne . . . return[ing] to . . . pick K.A. up [later] that evening [that] Kyla Ambrose sent K.A. outside to meet with Cheyenne []. Shortly after, K.A. returned to Kyla['s] apartment in tears, stating that his "father," [Appellant], was fighting with Cheyenne [], and that [Appellant] possessed a firearm. Subsequently, Kyla [] contacted emergency services.

Trial Ct. Op., 12/13/24, at 2-3 (some formatting altered).

Appellant was subsequently charged with one count of carrying a firearm without a license and one count of resisting arrest.[2]  **See** N.T., 3/6/24, at 3-4, 49, 52; N.T., 3/7/24, at 26. On March 6, 2024, the matter proceeded to a jury trial.

At trial, the trial court interviewed K.A. *in camera* to determine if the then-eight-year-old child was competent to testify as a witness. **See** N.T., 3/7/24, at 4-12. At the *in camera* interview, attended by counsel for Appellant

---

[2] **See** 18 Pa.C.S. §§ 6106(a)(1) and 5104, respectively. Appellant was also charged with possession of a firearm prohibited, 18 Pa.C.S. § 6105(a)(1). **See** N.T., 3/6/24, at 4. At the start of trial, the trial court granted Appellant's motion to sever the count of possession of a firearm prohibited from the other counts and ordered that the possession prohibited count would be tried at a later date before a different trial court judge. **See id.** at 3-4, 46, 48-52; **see also** Trial Ct. Order, 3/11/24.

and counsel for the Commonwealth, the trial court assessed K.A.'s ability to tell the truth about the incident of March 4, 2023, by asking questions such as, "Do you remember the situation?" and "[D]o you know how important it is to tell the truth about something?" *Id.* at 8. K.A. responded, "I remember a few things because I forgot a couple of things that happened[,]" and that he understood he needed to answer questions at trial truthfully and to not lie, and that he could answer "I don't know" if he did not know. *Id.* at 8-11. Appellant objected to K.A.'s competency to testify "based on the answers that he gave to the [trial court]." *Id.* at 13. The trial court overruled the objection, finding that K.A. "exhibited competence and is able to make competent statements[,]" and noted that K.A.'s competence might impact whether a hearsay statement would qualify as an excited utterance exception to the rule against hearsay. *Id.* at 13-15.

The Commonwealth called K.A. as its first trial witness. K.A. responded affirmatively to the question of whether he knew "the difference between the truth and a lie" and testified that he remembered the events of March 4, 2023. *Id.* at 62-63. Specifically, regarding Appellant's conduct that evening, K.A. testified as follows:

> Q: [W]ho came back to get you [from your Aunt Kyla's] that night?
>
> A: My mom and [Appellant].
>
> Q: Okay. And what happened when they came back to get you?
>
> A: I was crying, and I did not want to go.
>
> Q: Okay. Did you go?

- 3 -

A:  Yeah.  I went into the car.

Q:  Okay.  And what happened once you got to the car?

A:  I kept on crying, and then [Appellant] turned around to me crying, and he didn't like when I was crying.

Q:  Okay.  What did he do that made you think he didn't like that you were crying.

A:  I don't know.  I forgot again.

Q:  Okay.  That's okay.  What did you do after that?  Were you still in the car?

A:  Yes.

Q:  Okay.  And what did you see while you were still in the car?

A:  So when I didn't stop crying, [Appellant] pulled out a gun from somewhere, from somewhere in my mom's purse or down there somewhere.  It was somewhere in between his legs or down there somewhere.  And that made me, then I was crying because I didn't like what he did.  So I grabbed my bookbag and went back to ring the buzzer in Kyla's house, and I rang it a whole bunch of times be[fore] she let me in, and then I went inside to tell her what happened, but I didn't have enough breath to do it.

*Id.* at 65-66.

On cross-examination, when asked who was present when K.A. "met with the police and somebody from the DA's office" two days prior to the trial, K.A. answered, "I think I forgot." *Id.* at 67-68.  K.A. answered, "No.  I forgot again, because I didn't know a few things because I didn't know to, I didn't know in my head a lot." *Id.* at 68.  When asked if he remembered if "Officer Conley was there and the DA was there and they were reminding you about what to say for today; right?" K.A. replied, "Yeah.  I remember that now." *Id.* Further, the following exchange occurred on re-direct examination:

Q:  [K.A.], did anybody tell you what to say here today?

- 4 -

A: Yeah.

Q: Who told you what to say?

A: I forgot again.

Q: You forgot.

A: Yeah.

Q: Did anyone tell you to come in here and lie?

A: No.

Q: Did anyone tell you to come in here and tell the truth?

A: Yeah. My mom did.

*Id.* at 69-70.

Cheyenne testified that on the evening of March 4, 2023, Appellant had been arguing via Facebook messages with a person named Austin and after this argument Appellant obtained a gun in order to "fight" with Austin. *Id.* at 77-79, 97, 118-19, 121. Specifically, Cheyenne explained that, after dropping off her son, K.A., at her sister Kyla's home, she and Appellant planned to go to a casino but that "[Appellant] started arguing with this boy over Facebook, and when the argument started, he turned around to go back home, I don't know, to fight him or whatever they were arguing about." *Id.* at 77. Cheyenne testified that Appellant took some money out of an ATM and then went into a house. *See id.* at 77-78. Cheyenne stated that Appellant "came back outside with a gun[]" in Appellant's waistband "under his shirt." *Id.* at 78. Afterwards, Cheyenne and Appellant returned to Kyla's home to pick up K.A. *See id.* at 79. Cheyenne testified that while they were in the parking lot of Kyla's apartment complex, she and Appellant saw a police car

approaching. *See id.* at 84. At that time, Appellant instructed her to put the gun in her purse, which she did, and then she kicked the purse underneath another car in the parking lot. *See id.* at 84-85.

On re-direct examination, after Appellant's counsel attacked Cheyenne's credibility,[3] the Commonwealth proffered "text messages [] dated the date of [the] incident" and Cheyenne testified that the evidence contained screenshots of "[Appellant] and Austin's messages[,]" that she had "take[n] those screenshots" from "Facebook messages that were being sent back and forth that night[,]" and that the text messages has been sent by Appellant and not by Cheyenne *Id.* at 19-20, 118-19, 121. On re-cross-examination, Cheyenne clarified that the screenshots were "from [Appellant's] Facebook account" and that "his account was on my phone because we shared a phone." *Id.* at 120-21. The trial court admitted the Facebook messages over Appellant's objections that they lacked authentication and relevance. *Id.* at 17, 122.[4]

_____

[3] On cross examination, after noting that Cheyenne had given various differing accounts to police, Appellant's counsel stated, "you're here now today to testify against [Appellant] because your goal is to get out of this; isn't that right?" N.T., 3/7/24, at 98-100, 113.

[4] We note that at the start of the trial proceedings, Appellant argued that the text messages were not relevant to demonstrating that Appellant had carried a firearm without a license, to which the Commonwealth had responded that they were relevant to why Appellant "would have had a firearm that night[]" and "corroborating evidence as to [Cheyenne's] story of what happened that night." *Id.* at 19-20.

Beaver County Sheriff Tony Guy testified that his staff had performed a statewide search of concealed carry permits under Appellant's name and date of birth within the last two years and that "[t]here was no record found[]" of any such permit. *Id.* at 125-26.

Kyla testified that on the evening of March 4, 2023 she hosted a birthday party for her son at her apartment which K.A., Appellant, and Cheyenne attended. *See* N.T., 3/8/24, at 83. After the party ended, Cheyenne and Appellant departed, leaving K.A. to stay overnight with Kyla. *See id.* Kyla testified that later that night, at about 10:30 p.m., Cheyenne and Appellant came back to pick up K.A. *See id.* Kyla explained that K.A. was upset at this change of plan and started crying and was crying when Cheyenne arrived to pick K.A. up. *See id.* at 83-84. Kyla testified that about two minutes after K.A. left that he returned to the apartment, and "he was [] scared, crying, and he tells me, [] 'My mommy and my daddy are fighting,' that's who he calls [Appellant] his dad. He said, 'My mommy and my daddy are fighting, and my daddy had a gun.'" *Id.* at 84-85. Appellant objected to the testimony as hearsay, to which the Commonwealth responded that it was admissible as an excited utterance, and the trial court overruled the objection. *Id.* at 85. Kyla then testified that K.A. stated that Appellant had a gun "on the floor" and "then he says it was [in Appellant's] hand." *Id.* at 85-86. Kyla testified that she then called the police and the trial court admitted the 911 recording of her call. *See id.* at 86-87; *see* Commonwealth's Ex. 5.

On March 12, 2024, the jury found Appellant guilty of carrying a firearm without a license and not guilty of resisting arrest. **See** Verdict, 3/12/24. On March 22, 2024, the trial court sentenced Appellant to forty-two to eighty-four months of incarceration for the offense of carrying a firearm without a license. **See** Sentence Order, 3/22/24.

Appellant filed timely post-sentence motions in which he challenged both the sufficiency and the weight of the evidence. **See** Post-Sentence Mot., 4/1/24. On June 11, 2024, with leave from the trial court, Appellant filed supplemental post-sentence motions, wherein he claimed that the trial court had erred in admitting K.A.'s testimony, the Facebook messages, and Kyla's testimony regarding K.A.'s hearsay statements. **See** Suppl. Post-Sentence Mot., 6/11/24; **see also** Trial Ct. Order, 4/10/24. On August 6, 2024, the trial court denied all of Appellant's post-sentence motions. On September 4, 2024, Appellant filed a notice of appeal.[5] Both Appellant and the trial court timely complied with Pa.R.A.P. 1925.

_____

[5] As of the date on which Appellant filed his notice of appeal, Appellant had been acquitted of the charge of resisting arrest, convicted and sentenced for the offense of carrying a firearm without a license, and the trial court had denied Appellant's post-sentence motions related to this conviction. **See** Sentence Order, 3/22/24; Trial Ct. Order, 8/6/24 (denial of post-sentence motions). However, Appellant had not been tried for the charge of possession of firearms prohibited, which charge the trial court had severed from the other charges on March 6, 2024. **See** Severance Order, 3/11/24; **see generally** Trial Ct. Docket. Subsequently, on September 24, 2024, the trial court dismissed the remaining charge of possession of firearms prohibited. **See** Trial Ct. Order, 9/24/24.

*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issues, which we reorder as follows:

1. Whether the Commonwealth presented sufficient evidence to prove the elements of [carrying a firearm] without a license?

2. Whether the jury's verdict was against the weight of the evidence presented by the Commonwealth at trial?

3. Whether the trial court erred in permitting the minor, K.A., to testify at trial?

4. Whether the trial court erred in admitting into evidence Commonwealth's "exhibit 2[,]" specifically, "Facebook messages" that could not be authenticated by any Commonwealth witness?

_____

The August 4, 2024 order denying Appellant's post-sentence motions therefore did not "dispose[] of all claims and of all parties[,]" as one charge was still pending on this date. *See* Pa.R.A.P. 341(b) ("[a] final order disposes of all claims and all parties"); *see also Commonwealth v. Shearer*, 882 A.2d 462, 466 (Pa. 2005) (noting that Rule 341(b) provides that "[g]enerally, a litigant may only appeal from a final order, which is one that puts the litigants out of court" (citation omitted)). Accordingly, when Appellant filed his notice of appeal on September 4, 2024, the trial court had not yet issued a final order, appealable as of right, and Appellant's notice of appeal was filed prematurely. *See* Pa.R.A.P. 341(a) ("an appeal may be taken as of right from any final order of a government unit or trial court"); *see also Commonwealth v. Culsoir*, 209 A.3d 433, 436-37 (Pa. Super. 2019) (same); *Culsoir*, 209 A.3d at 436-37 (explaining that where a judgment of sentence does not dispose of all charges "[a]ny appeal filed before the disposal of those charges [is] premature and interlocutory").

While Appellant's notice of appeal was filed prematurely, the trial court's dismissal of the last charge on September 24, 2024 disposed of all claims in the criminal complaint and we deem Appellant's premature appeal perfected by the entry of a final order on this date. *See Culsoir*, 209 A.3d at 436-37; *see also* Pa.R.A.P. 905(a)(5) (stating that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"). We therefore proceed to review the merits of Appellant's claims.

5. Whether the trial court erred in admitting into evidence hearsay testimony . . . from Commonwealth witness Kyla Ambrose. The Commonwealth did not establish that this testimony fell within any hearsay exception.

Appellant's Brief at 3 (some formatting altered).

**Sufficiency of the Evidence**

Appellant challenges the sufficiency of the evidence, arguing that "no forensic evidence . . . connects [him] to the firearm seized by the police from inside [Cheyenne's] purse." *Id.* at 17.[6]  Appellant contends that Cheyenne "exercised dominion and control over the firearm, in that, it was inside of her purse [and, f]urther, she moved the purse in an effort to secret the purse from the police." *Id.*  Appellant argues that he "was merely present in the vicinity of the purse [and, w]hen the police arrived on the scene, [was] not in possession of the firearm." *Id.* at 18-19.  Appellant contends – assuming that he prevails in excluding K.A.'s testimony and Kyla's testimony of K.A.'s hearsay statement – that the only evidence establishing that Appellant possessed a firearm is Cheyenne's testimony, which he characterizes as coming "from a corrupt and polluted source." *Id.* at 18-20.  Further, Appellant accuses Cheyenne of "tampering with the [Facebook messages] and K.A.'s testimony." *Id.* at 20.

_____

[6] Because Appellant challenges both the sufficiency and weight of the evidence, we address the sufficiency of the evidence first. ***See Commonwealth v. Spence***, 290 A.3d 301, 308 n.4 (Pa. Super. 2023) (stating that because "a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we shall address this issue first" (citation omitted)).

Our standard of review for sufficiency claims is as follows:

Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary. . . .

In conducting sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt. Our review does not involve reweighing the evidence and substituting our judgment for that of the fact-finder.

**Commonwealth v. Muhammad**, 335 A.3d 1047, 1051 (Pa. 2025) (citations omitted and some formatting altered). Our review should not disturb the jury's assessment of "the credibility of witnesses and the weight of the evidence produced [or whether] to believe all, part or none of the evidence." **Commonwealth v. Barkman**, 295 A.3d 721, 732 (Pa. Super. 2023) (citation omitted). "In addition, the facts and circumstances need not be absolutely incompatible with the defendant's innocence; rather, the question of any doubt is for the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." **Muhammad**, 335 A.3d at 1051 (citation omitted).

When "evaluating the sufficiency of the evidence, we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings

- 11 -

are correct." ***Commonwealth v. Gray***, 867 A.2d 560, 567 (Pa. Super. 2005) (citations and quotation marks omitted)).

Section 6106(a)(1) of the Crimes Code defines the offense of carrying a firearm without a license as "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter[.]" 18 Pa.C.S. § 6106(a)(1).

Following our review of the record, viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to establish that Appellant committed the crime of carrying a firearm without a license. ***See Muhammad***, 335 A.3d at 1051; ***Barkman***, 295 A.3d at 732. Specifically, the record reflects that on the evening of March 4, 2023, Appellant got into an argument with a person named Austin via Facebook messenger during which Appellant stated that he wanted to fight Austin. ***See*** N.T., 3/7/24, at 77-79, 97; ***see*** Commonwealth's Ex. 2. After the argument, Appellant obtained a gun, which he concealed about his person at a location that was not his abode or fixed place of business. ***See*** N.T., 3/7/24, at 77-79. K.A. testified that while in a car in Kyla's apartment complex later that evening, K.A. observed Appellant pull "out a gun from somewhere, from somewhere in my mom's purse or down there somewhere. It was somewhere in between his legs or down there somewhere." ***Id.*** at 66. When K.A. reported to Kyla that Appellant had a gun, Kyla called the police. ***See*** N.T., 3/8/24, at 86-87; ***see also*** Commonwealth's Ex. 5.

As police were approaching the parking lot, Cheyenne put the gun in her purse and placed the purse underneath another vehicle in the parking lot. N.T., 3/7/24, at 84-85. Police recovered a 9-millimeter Smith & Wesson handgun loaded with a live round in a purse under a vehicle near Appellant's Dodge Stratus in the parking lot of Kyla's apartment complex. *See id.* at 33-34. Appellant did not have a concealed carry permit at the time of the incident. *See id.* at 125-26. It is clear that all of the evidence received by the jury, including the testimony recounted above, was sufficient to allow the fact-finder to conclude that Appellant carried a firearm without a license in violation of 18 Pa. § 6106(a)(1).[7] Therefore, Appellant is not entitled to relief on this claim.

## Weight of the Evidence

In support of his weight of the evidence claim, Appellant argues that "the jury inappropriately considered testimony from a child-witness that was inconsistent at best" and "not credible as confirmed through Kyla['s]

---

[7] To the extent that Appellant argues that Cheyenne was not credible, we note that challenges to reliability of evidence go to the weight of the evidence, not sufficiency. *See, e.g.*, *Barkman*, 295 A.3d at 733 (noting that unlike weight claim, "a sufficiency claim must accept the credibility and reliability of all evidence that supports the verdict" (citation omitted)). As stated above, it is the jury's function to weigh the evidence and make credibility determinations. *See id.* at 732. Further, when reviewing a sufficiency claim, we must consider all of the evidence presented at trial, "without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Gray*, 867 A.2d at 567 (citations and quotation marks omitted). Therefore, Appellant's contention – that, in resolving his sufficiency claim, this Court should discount K.A.'s testimony and Kyla's testimony which contained hearsay – misapprehends the law. *See id.*; *Barkman*, 295 A.3d at 732.

testimony[]" and because Cheyenne "admitted to tampering with the firearm" and "[t]he record [] shows that [she] tampered with [] Appellant's 'Facebook account[.]'" Appellant's Brief at 22.

To preserve a weight of the evidence claim, a party must first raise the claim before or at sentencing or in a post-sentence motion. **See** Pa.R.Crim.P. 607(A). Further,

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

**Commonwealth v. Windslowe**, 158 A.3d 698, 712 (Pa. Super. 2017) (citations omitted).

> Accordingly, in reviewing weight claims we are mindful that
>
> [t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

*     *     *

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Spence***, 290 A.3d 301, 311 (Pa. Super. 2023) (citations omitted and formatting altered); ***see also Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006) (stating that "[i]t is not for [the appellate court] to overturn the credibility determinations of the fact-finder" (citation omitted)).

Here, the trial court explained that it denied Appellant's post-sentence motion challenging the weight of the evidence because it "[p]resided over Appellant's jury trial and observed all testimony and evidence presented to the jury[]" and did "not find that the jury's verdict was so contradictory to the evidence as to shock one's sense of justice." Trial Ct. Op., 12/13/24, at 13 (some formatting altered).

Following our review of the record, we discern no abuse of discretion in the trial court's disposition of Appellant's weight claim. ***See Windslowe***, 158 A.3d at 712. Appellant argues that Cheyenne's and K.A.'s testimony was not credible. ***See*** Appellant's Brief at 22. However, the jury was free to believe

all, none, or some of their testimony. *See Spence*, 290 A.3d at 311. We decline to substitute our judgment for that of the trier of fact. *See id.*; *see also Blackham*, 909 A.2d at 320. Appellant has failed to establish that the evidence was "so tenuous, vague and uncertain" that it should have "shocked the conscience of the court" for the jury to rely on such evidence to reach the verdict. *See Spence*, 290 A.3d at 311. Therefore, Appellant is not entitled to relief on his weight claim.

### Evidentiary Issues

Appellant's remaining claims challenge the trial court's evidentiary rulings. We review evidentiary rulings for an abuse of discretion. *See Commonwealth v. Thompson*, 314 A.3d 922, 926 (Pa. Super. 2024). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted).

### Competency of Minor Witness

Appellant claims that the trial court erred in allowing K.A. to testify, arguing that K.A. "did not have the capacity to observe or perceive the events of March 4, 2023 with any degree of accuracy." Appellant's Brief at 9-11. Appellant characterizes the child's testimony as "K.A. repeatedly stat[ing] that he forgot or did not remember answers to questions he was asked[,]" such as why he was at Kyla's house that night, why Appellant did not like that he was

- 16 -

crying, the location of the firearm in the vehicle, and who K.A. met with two days before trial or where the meeting took place. *Id.* 9-10. Appellant contends, without citation to authority, that K.A.'s testimony was "tainted" by his mother, Cheyenne, who had admitted to tampering with the evidence in this matter, and describes "most of [K.A.'s] answers" as elicited "in response to leading questions." *Id.* at 8-10. In support of the claim that K.A.'s testimony was 'tainted,' Appellant notes that in response to the Commonwealth's question of, "[D]id anybody tell you what to say here today?" that K.A. answered, "Yeah." *Id.* at 11 (citation omitted).

Pennsylvania Rule of Evidence 601 provides, in relevant part:

**(a) General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these rules.

**(b) Disqualification for Specific Defects.** A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

(1) is, or was, at any relevant time, incapable of perceiving accurately;

(2) is unable to express himself or herself so as to be understood . . .[,]

(3) has an impaired memory; or

(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601; *see also Commonwealth v. Delbridge*, 855 A.2d 27, 39 (Pa. 2003) (stating that "[t]he general rule in Pennsylvania is that every person is presumed competent to be a witness").

This Court has explained:

- 17 -

> The party challenging the competence of the witness has the burden to assert the challenge and to prove that the witness is, in fact, incompetent to testify. **Rosche v. McCoy**, 156 A.2d 307, 309 (Pa. 1959). . . .
>
> The presumption of competency to testify does not arise, however, where a child is under the age of 14 at the time he or she is to offer testimony at trial. **[Id.]** at 310. [For such child witnesses] "there must be judiciary inquiry as to [the] mental capacity of the child, which must be more searching in proportion to chronological immaturity." [**Id.**; **see also Commonwealth v. Hutchinson**, 25 A.3d 277, 290 (Pa. 2011) (citation omitted).] A competency hearing of a minor witness is directed to the mental capacity of that witness to perceive the nature of the events about which he or she is called to testify, to understand questions about that subject matter, to communicate about the subject at issue, to recall information, to distinguish fact from fantasy, and to tell the truth. **Hutchinson**, 25 A.3d [at] 290. When the competence of a minor witness is challenged, either the trial court or the district attorney ordinarily asks the minor witness several questions to extract the minor's capacity for understanding the difference between right and wrong and his or her duty to speak truthfully about the matter at hand. **Commonwealth v. Shearer**, 882 A.2d 462, 469 (Pa. 2005).

**Commonwealth v. Gray**, 509 WDA 2020, 2021 WL 856169, at *5 (Pa. Super. filed Mar. 8, 2021) (unpublished mem.) (some formatting altered).[8]

After our review of the record, we discern no abuse of discretion in the trial court's finding that K.A. was competent to testify. **See Thompson**, 314 A.3d at 926. During his *in camera* interview with the trial court judge, K.A. indicated that he understood what the truth is and what is a lie, the importance of telling the truth at trial, and to truthfully state if he did not know the answer to a question. **See** N.T., 3/7/24, at 4-12; **see also Shearer**, 882 A.2d at

---

[8] We may cite to unpublished memorandum decisions of the Superior Court filed after May 1, 2019, for their persuasive value. **See** Pa.R.A.P. 126(b).

469; Pa.R.E. 601; **Rosche**, 156 A.2d at 310; **Hutchinson**, 25 A.3d at 290; **Gray**, 2021 WL 856169, at *5.[9]  Therefore, Appellant is not entitled to relief on this claim.

## Facebook Messages

Next, Appellant claims that the trial court abused its discretion when it admitted the Facebook messages.  Specifically, Appellant argues that digital evidence must be authenticated by "testimony of time stamps, dates and other evidence specific to the purported owner must be presented" and therefore that "authentication evidence presented through [Cheyenne] at trial was insufficient."  Appellant's Brief at 12 (citing **Commonwealth v. Orr**, 255 A.3d 589 (Pa. Super. 2021)).  Appellant also argues that the evidence was irrelevant pursuant to Pa.R.E. 401 because "the content of those messages do not in any way tend to make a fact more or less probable [that] Appellant carried a firearm without a license."  **Id.** at 13.

With regard to authentication of electronic communications, Rule 901 instructs that a proponent may offer either "direct evidence such as testimony

---

[9] While Appellant argues that Cheyenne had "tainted" K.A.'s testimony, and notes that Cheyenne admitted to giving false statements to police and tampering with evidence, Appellant fails to cite authority for his contention that the alleged taint should bar K.A.'s testimony and fails to identify where in the record he lodged an objection on this basis at trial.  **See** Appellant's Brief at 8-11.  Appellant has therefore waived any claim that K.A.'s testimony was 'tainted.'  **See Commonwealth v. Matlaga**, 1379 EDA 2020, 2022 WL 1223288, at *6-7 (Pa. Super. filed Apr. 26, 2022) (unpublished mem.) (finding waiver of argument, that a minor victim's "memory was tainted" and therefore her testimony should not have been permitted, where the appellant "fails to cite to any relevant legal authority" (citing to Pa.R.A.P. 2119 and **Commonwealth v. Martz**, 232 A.3d 801, 811 (Pa. Super. 2020))).

of a person with personal knowledge" or circumstantial evidence to "connect digital evidence with a person[.]" Pa.R.E. 901(b)(11). Circumstantial evidence to authenticate digital evidence may include "identifying content" or "proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship."

*Id.*

> This Court has explained:

> Authentication generally entails a relatively low burden of proof. Authentication of electronic communications, like documents, requires more than mere confirmation that the number or address belonged to a particular person. Circumstantial evidence, which tends to corroborate the identity of the sender, is required. Accordingly, authentication of text messages "turns upon the depth of direct and circumstantial evidence of authorship marshaled by the proponent of the text messages." *Commonwealth v. Orr*, 255 A.3d 589, 601 (Pa. Super. 2011); *see also* Pa.R.E. 901(b)(11).

*Commonwealth v. Nabried*, 327 A.3d 315, 323 (Pa. Super. 2024).

Based on our review of the record, we discern no abuse of discretion in the trial court's decision to admit the Facebook messages. *See Thompson*, 314 A.3d at 926; *Nabried*, 327 A.3d at 323. As noted, Cheyenne testified that Appellant's motive for obtaining a gun was "to fight" with a person named Austin, an individual whom Appellant had been arguing with through Facebook messages that evening. *See* N.T., 3/7/24, at 77, 97. Cheyenne testified that she shared a cell phone with Appellant, that Appellant was logged into his Facebook account on the shared device, and that she therefore had access to Appellant's Facebook account on their shared device. *See id.* at 118-121.

- 20 -

Cheyenne further testified that she took the screenshots of the Facebook messages from their shared device and that the screenshots depicted "Appellant's and Austin's messages . . . that were being sent back and forth that night." *Id.* at 118-19. Therefore, we agree with the trial court that the Facebook messages were relevant to establishing the offense of carrying a firearm without a license and that Cheyenne's testimony sufficiently authenticated the Facebook messages. *See* Pa.R.E. 401, 901(b)(11); *see also Nabried*, 327 A.3d at 323; *Orr*, 255 A.3d at 601. Accordingly, Appellant is not entitled to relief on this claim.

**Hearsay**

Lastly, Appellant argues that the Commonwealth failed to establish an excited utterance hearsay exception for Kyla's testimony repeating K.A.'s statements about Appellant's possession of a gun on the evening of March 4, 2023. Appellant's Brief at 14. Appellant contends that the trial court failed to "'conduct a fact-specific inquiry and ascertain whether the remark was sufficiently contemporaneous to the startling event to be considered spontaneous.'" *Id.* (citing *Commonwealth v. Sherwood*, 982 A.2d 483, 496 (Pa. 2009); N.T., 3/8/24, at 85). Appellant further contends that "[K.A.'s] statements were not contemporaneous to the startling event to be considered spontaneous" because "K.A. was crying and upset before the alleged startling event may have taken place." *Id.* at 15-16. Appellant also notes that Kyla had stated that "K.A. had a propensity to make up stories to get his way." *Id.* at 16.

Hearsay is "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Rules 803 through 804 provide exceptions to the rule against hearsay. **See** Pa.R.E. 803, 803.1, 804. Under Rule 803(2), a hearsay statement is admissible if it is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused[,]" *i.e.*, an "excited utterance." Pa.R.E. 803(2). To determine if a statement qualifies as an excited utterance, "the crucial question . . . is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." Pa.R.E. 803(2) cmt. (citation omitted).

In **Sherwood**, our Supreme Court held that "in determining whether a remark fits within [the excited utterance] exception, a court must conduct a fact-specific inquiry and ascertain whether the remark was sufficiently contemporaneous to the startling event to be considered spontaneous." **Sherwood**, 982 A.2d at 496. The **Sherwood** Court did not note, however, whether the trial court therein conducted a "fact-specific inquiry" on the record at the time of objection nor mandate that a trial court must make such a "fact-specific inquiry" on the record at the time of the objection. **See id.** Subsequently, in **Commonwealth v. Hogan**, 1328 MDA 2020, 2021 WL

- 22 -

5822818 (Pa. Super. filed Dec. 7, 2021) (unpublished mem.), this Court reviewed **Sherwood**'s requirement that "a court must conduct a fact-specific inquiry" when assessing whether a statement was an excited utterance, but did not address whether the trial court placed its reasons for admitting the objected-to hearsay statement as an 'excited utterance' on the record at the time of the objection. **See Hogan**, 2021 WL 5822818, at *1-4 (concluding that the trial court properly admitted a police officer's testimony about the victim's statement describing his attacker as an excited utterance because the officer had approached the victim after hearing the victim calling for help and the victim made the statement shortly after "being ferociously assaulted").

Here, the trial court explained that K.A.'s hearsay statement was an excited utterance because Kyla testified that

> K.A. made the statement after running to [Kyla's] home, having witnessed the event moments ago. Kyla [] testified that K.A. was crying and overwhelmed by emotion. She testified that K.A. ran to her home right from the scene where the event occurred and made the admitted statements. A child, scared and crying, and running to the nearest adult, is very unlikely to be spinning a tale in the moment[.]

Trial Ct. Op., 12/13/24, at 8.

Based on our review of the record, we discern no abuse of discretion in the trial court's decision to admit K.A.'s hearsay statements as excited utterances. **See Thompson**, 314 A.3d at 926. The trial court's explanation reflects that the challenged statements were "sufficiently contemporaneous to the startling event to be considered spontaneous." **See Sherwood**, 982 A.2d

at 496; *see also* Pa.R.E. 803(2). To the extent that Appellant argues that *Sherwood* requires the trial court to conduct a "fact-specific inquiry" on the record at the time that the trial court overruled Appellant's hearsay objection, we disagree. Appellant does not cite authority for his claim that the trial court must conduct its inquiry on the record, beyond *Sherwood* itself. Further, we find nothing in *Sherwood*, nor in subsequent decisions of our Supreme Court or this Court, which requires a trial court to place such a fact-specific inquiry on the record at the time of ruling. *See Sherwood*, 982 A.2d at 496; *see also Hogan*, 2021 WL 5822818, at *1-4. On this record, we are satisfied that the trial court conducted a fact-specific inquiry and detect no abuse of discretion or error of law in the trial court's decision to permit Kyla to testify to K.A.'s hearsay statement as an excited utterance. *See Thompson*, 314 A.3d at 926; Pa.R.E. 803(2). Accordingly, Appellant is not entitled to relief on this issue.

For the reasons set forth above, we conclude that Appellant is not entitled to relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgement of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/31/2025