J-S39041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| KELECHI J. CHIBUNDU | : | |
| Appellant | : | No. 269 EDA 2025 |

Appeal from the Judgment of Sentence Entered November 24, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004595-2022

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED FEBRUARY 12, 2026**

Kelechi J. Chibundu ("Chibundu") appeals from the judgment of sentence following his convictions for third-degree murder, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, and possession of an instrument of crime.[1]  Chibundu challenges the weight and sufficiency of the evidence supporting his murder conviction.  He also brings assertions of error related to the admission of inculpatory social media messages he sent in the wake of the shooting, in addition to contesting a "flight" jury instruction and the discretionary aspects of his sentence.  Because none of Chibundu's issues merit relief, we affirm.

The trial court set forth the factual and procedural history as follows:

> [The evidence in the light most favorable to the Commonwealth established the following.]  Around 7 p.m.[, i]n

_____

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6108, 907(a).

January [] 2022, [Chibundu] arrived at the home of Kiana Johnson [("Johnson")]. At that time, [] Johnson was home with her three children, the two oldest of whom she shared with [Chibundu]. [Chibundu] had gone to [] Johnson's home in order [to] pick up his children, but [she] refused to allow [him] to take them because she thought [he] was drunk. After [] Johnson refused to allow [Chibundu] to leave with his children, the pair got into an argument outside of the house, during which [Chibundu] broke the window of [] Johnson's home and threw a bottle at [her]. [] Johnson threw the bottle back towards [Chibundu] before reentering her home. After the argument broke up, [Chibundu] called 911 to report that [] Johnson broke the windshield of his vehicle with the bottle, and drove away. While [Chibundu] was at [] Johnson's home, [] Johnson noticed a gun in [Chibundu's] pocket.

As [Chibundu] left the area . . ., Kalib Adams [("Adams")], the paternal uncle of [] Johnson's youngest child, arrived at [] Johnson's house. [] Johnson had reached out to her youngest child's father to pick up the child following the altercation with [Chibundu], but since the child's father was unavailable, [] Adams went instead. Police also arrived at [] Johnson's home after [Chibundu] left, but [] Johnson indicated to the officers that she did not want police service, at which point the officers left.

At around 8 p.m., about an hour after [Chibundu] had first arrived at [] Johnson's house, [Chibundu] returned to West Carey Street[, *i.e.*, the area where Johnson resided,] in his vehicle with an unknown male. When [Chibundu] returned, he got into a verbal altercation with [] Adams outside the front door of [] Johnson's home regarding the children. Immediately following the argument, several friends of [] Adams, including . . . Melvin Hollimon [("Hollimon," or, alternatively, "the victim")], appeared on West Carey Street and got involved in the dispute. The group then got into a "big argument" . . ..

Eventually, the argument moved away from [] Johnson's house and onto 20th Street, where a physical fight between [] Hollimon and [Chibundu] broke out. [] Hollimon won the fight. As the group of men started to disperse, [Chibundu] asked the male he arrived with to get a gun. Immediately following [Chibundu's] request, [Chibundu] shot at [] Hollimon seven times as [] Hollimon ran back towards West Carey Street, striking him twice in the back, before [Chibundu] drove away with the

unknown man. [] Hollimon collapsed in front of the house next to [] Johnson's house. About fifteen seconds after [Chibundu] shot [] Hollimon, an unknown person fired off another round of nine shots. After [] Hollimon was shot, [] Johnson called 911, and informed both the 911 operator and the first responding officer that she saw [Chibundu] shoot [] Hollimon.

[] Hollimon was transported to Temple Hospital by [] Adams and some of the other men who were outside. [] Hollimon was pronounced dead at 8:37 p.m. as a result of his injuries. The medical examiner determined that [] Hollimon's cause of death was multiple gunshot wounds to the torso, [including the back,] and his manner of death was homicide. [Additionally, Chibundu] was not licensed to carry a firearm on the date of the murder. [No firearms were found at the scene nor on Hollimon nor on any of the men in the vehicle that transported him to the hospital.]

\* \* \* \*

Finally, . . . numerous messages [were] recovered from [Chibundu's] Instagram account, "@automatic_kel." Specifically . . ., less than [twenty-four] hours after the murder, [Chibundu] sent a screenshot from the Citizen app[, used by civilians to report to one another, *inter alia*, police activity,] to another Instagram user, "@rell20th," depicting a notification regarding "a man fatally shot" at 20th and Carey Streets. Immediately after sending this screenshot, [Chibundu] sent another message to @rell20th, in which he stated "[a]lready did it turkey" followed by three laughing emojis.

In addition to this message, [Chibundu] sent a message to Instagram user "@medcurry" two days after the murder, in which he asked @medcurry to "[p]ut [him] on the roster," and stated that he was "on the run [and needed] a new car and a job." [Chibundu] further asked @medcurry[,] "[y]ou got money on anybody head I'm tryna collect," and told @medcurry he was "on the run for a hom[i]." [Chibundu] also messaged "@queentahtyahna" that same day, . . . writing[,] "[l]et me get some for I turn myself in for homicide."

. . . [A] lengthy conversation [also] occurred throughout the days following the murder between [Chibundu] and Instagram user "@servantumar." [Chibundu] sent the Citizen app notification to @servantumar, as well numerous messages

regarding [Chibundu's] status as a fugitive and his involvement in [] Hollimon's murder. Additionally, at one point in the conversation, @servantumar messaged [Chibundu] "Kiana telling?" to which [Chibundu] responded "[g]ot to be." Following this message, [Chibundu] changed the vanity name on his Instagram account to "@zxvyaems," clearly indicating his desire to hide his Instagram messages. These messages, in which [Chibundu] bragged about the murder, suggested that he be hired as a hitman, discussed what [] Johnson saw, and talked about being on the run[,] clearly indicated [Chibundu's] consciousness of guilt.

\* \* \* \*

[Chibundu was charged with the above offenses and proceeded to a jury trial. I]n July [] 2024, following a jury trial . . ., . . . Chibundu was convicted of third[-]degree murder [and the accompanying offenses discussed above]. [I]n November [] 2024, the [c]ourt sentenced [Chibundu] to 20 to 40 years [of] incarceration for third[-]degree murder, as well as consecutive terms of [three-and-a-half] years for carrying a firearm without a license, and [one-and-a-half to three] years for carrying a firearm in Philadelphia, for an aggregate sentence of [twenty-five to fifty] years [of] incarceration. The [c]ourt also imposed a concurrent sentence of [one to two] years for PIC. [Chibundu] timely filed post-sentence motions, which the [c]ourt denied on January 13, 2025.

\* \* \* \*

Trial Court Opinion, 4/16/25, at 1-4, 11-12 (paragraphs re-ordered for clarity; citations to the record omitted). Both Chibundu and the trial court have complied with Pa.R.A.P. 1925.

Chibundu raises the following issues for our review:

1. Whether the trial court erred in admitting unauthenticated and inadmissible *Instagram* posts?

2. Whether the court erred in overruling the defense's objection to the jury's "flight instruction"?

3. Whether the evidence was insufficient to prove [Chibundu] guilty of third-degree murder?

- 4 -

4. Whether the verdict for third-degree murder was against the weight of the evidence?

5. Whether the sentence was excessive as the trial court failed to state on the record the reasons for sentencing [Chibundu] in the aggravated range of the guidelines, while not considering that mitigating circumstances and the specific facts of the case?

Chibundu's Brief at viii (issues re-ordered for ease of disposition).

In his first issue, Chibundu asserts the trial court erred in admitting evidence of his Instagram messages. Our standard of review for evidentiary rulings is as follows:

. . . [D]ecisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

**Commonwealth v. Talley**, 236 A.3d 42, 55 (Pa. Super. 2020).

Chibundu's argument with respect to the Instagram messages is two-pronged. Chibundu maintains the messages were not sufficiently authenticated, and, additionally, he picks out a particular message from an associate advising he get "strapped" as improperly admitted because it was inadmissible hearsay. We address the arguments *seriatim*.

Regarding authenticity, this Court has explained:

Pennsylvania Rule of Evidence 901 governs the authentication of evidence and authentication prior to the admission of electronic evidence. ***See Commonwealth v. Murray***, 174 A.3d 1147, 1157 (Pa. Super. 2017). Rule 901(a) provides, "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) provides in relevant part:

The following are examples only—not a complete list—of evidence that satisfies the requirement:

\* \* \*

*(11) Digital Evidence.* To connect digital evidence with a person or entity:

(A) direct evidence such as testimony of a person with personal knowledge; or

(B) circumstantial evidence such as:

(i) identifying content; or

(ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship.

Pa.R.E. 901(b)(11).

***Commonwealth v. Reed***, 292 A.3d 601, 605 (Pa. Super. 2023).

Crucially, "The proponent of digital evidence is not required to prove that no one else could be the author. Rather, the proponent must produce sufficient evidence to support a finding that a particular person or entity was the author." ***Id***. at 605-06 (internal citation and quotations omitted). Further,

- 6 -

Circumstantial evidence of ownership, possession, control, or access to a device or account alone is insufficient for authentication [but such evidence may be enough] in combination with other evidence of the author's identity." Such circumstantial evidence includes, for example, testimony from the person who sent or received the communication or contextual clues in the communication tending to reveal the identity of the sender.

*Id*. at 606 (internal citation omitted). Generally, authentication requires a low burden of proof. *See Commonwealth v. Jackson*, 283 A.3d 814, 818 (Pa. Super. 2022).

Chibundu argues the trial court erred in admitting various Instagram posts. Chibundu argues that "absent definitive evidence tying a person to the authorship of social media content, such communications—including *Instagram* posts—are inadmissible." Chibundu's Brief at 23. He emphasizes that the phone was not recovered from his person or registered in his name, and no forensic evidence tied him to the phone. *See id*. He also suggests that third parties could have had access to the social media account, and that "the mere linkage of a phone number falls far short of authenticating the posts. *See id*. at 24.

The trial court set forth the authenticating evidence linking Chibundu to the Instagram account:

[] Johnson identified this Instagram account as belonging to [Chibundu]. [] Johnson also gave detectives [Chibundu's] phone number, which appeared in various messages sent by the @automatic_kel Instagram account. This information was used to authenticate [Chibundu's] account.

Trial Court Opinion, 4/16/25, at 11 n.8 (internal citations omitted).

Our review discloses no abuse of discretion by the trial court in concluding the Instagram account and messages sent therefrom were authenticated. Johnson identified the Instagram account as belonging to Chibundu. *See* N.T., 7/16/24, at 177. Chibundu's phone number appeared in messages sent from the Instagram account. *See id*. at 198. Additionally, the e-mail address associated with the Instagram account was in Chibundu's name: "Kelechichibundu@gmail.com." *Id*. at 197-98. Further, the messages sent via that account reference the events Chibundu participated in the night of his altercation with Johnson when Hollimon was shot, including the fact that he was involved in a homicide and his belief that Johnson had informed the police of that fact. *See id*. at 213. The Commonwealth was not required to prove that no one else could have sent the messages; rather, it was tasked with advancing sufficient evidence—including circumstantial evidence—to show that Chibundu was the author. *See Talley*, 236 A.3d at 60 (circumstantial evidence sufficient to authenticate screenshots of text messages sent anonymously by the appellant); *Reed*, 292 A.3d at 608 (holding the same). As such, Chibundu's assertion of error merits no relief.

Chibundu also argues the statement by a third party that he should "get strapped" was inadmissible hearsay and suggests it violates the Confrontation Clause. *See* U.S. Const. Amend. VI; Pa. Const. Art. I § 9.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *See Commonwealth v. Cassidy*, 462 A.2d 270, 272 (Pa.

Super. 1983); *see also* Pa.R.E. 801(c).  The comment to Rule 801 notes that "[c]ommunications that are not assertions are not hearsay.  These would include questions, greetings, expressions of gratitude, exclamations, offers, *instructions*, *warnings*, etc."  Pa.R.E. 801 cmt. (emphasis added).

Regarding the Confrontation Clause, this Court has set forth the relevant law as follows:

> The United States and Pennsylvania Constitutions protect the right of each criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend. VI; Pa. Const. Art. I § 9.  The Supreme Court explained the focus of the Confrontation Clause:
>
>> It applies to "witnesses" against the accused—in other words, those who "bear testimony."  "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact."
>
> *Crawford* [*v. Washington*], 541 U.S. [36,] 51 [(2004)] . . . (dictionary citations omitted).  The *Crawford* Court held that the Confrontation Clause prohibits admission of "testimonial" hearsay unless the defendant had a prior opportunity to cross-examine the witness who made the statement (and the witness is unavailable at trial). *Id*. at 68–69 . . ..

*Commonwealth v. Thompson*, 314 A.3d 922, 926 (Pa. Super. 2024) (footnote omitted).

Chibundu argues the court erred in admitting a statement by a third party in an Instagram message to Chibundu that the latter needed to "get strapped," to which Chibundu replied, "always [sic]."  Chibundu's Brief at 14.  Chibundu argues the "strapped" comments was "classic hearsay," for which there were no recognized exceptions.  *Id*. at 16.  Chibundu also suggests the

- 9 -

"strapped" remark is a violation of the Confrontation Clause. *See id*. at 19-20.

The trial court considered Chibundu's argument and determined it merits no relief. Specifically, the court noted the statement advising Chibundu to get "strapped" was not admitted for its truth, and was not hearsay. *See* Trial Court Opinion, 4/16/25, at 17.[2]

We conclude Chibundu has failed to show the trial court abused its discretion in admitting this message. The third party informed/warned Chibundu that he should get "strapped," which, as the comment to Rule 801 clarifies, is not an assertion, and, as such, it lacks a truth value and therefore cannot be admitted for the truth of the matter asserted. *See Cassidy*, 462 A.2d at 272 (hearsay is an out-of-court statement offered to prove the truth of the matter asserted). As a Confrontation Clause violation requires testimonial hearsay, and this was not hearsay, nor was it testimonial, the message cannot violate the Confrontation Clause. *Cf*. *Thompson*, 314 A.3d at 926 (explaining the Confrontation Clause).

In sum: because the Commonwealth advanced sufficient evidence to show that Chibundu authored the messages, his authentication challenge

_____

[2] Instantly, the court determined the message was admitted for its effect on the listener and "to provide context to the conversation . . .." Trial Court Opinion, 4/16/25, at 17. While we conclude below the message was not hearsay for slightly different reasons, we may affirm on any legal basis. *Commonwealth v. Kennedy*, 151 A.3d 1117, 1127 n.14 (Pa. Super. 2016).

fails; and the third-party statement advising him to "get strapped" was not hearsay, and, accordingly the trial court committed no error in admitting the statement. Thus, Chibundu's first issue merits no relief.

In his second issue, Chibundu argues the trial court erred in giving the jury a "flight" instruction. Our standard of review for a trial court's decision on jury instructions is abuse of discretion of discretion or error of law. *See Commonwealth v. Sow*, 333 A.3d 698, 702 (Pa. Super. 2025).

> This Court has explained the relevant principles as follows:
>
> We are mindful that the trial court has broad discretion in phrasing its instructions as long as it presents the law to the jury clearly, adequately, and accurately. A flight instruction is proper when:
>
>> a person has reason to know he is wanted in connection with a crime, and proceeds to flee or conceal himself from the law enforcement authorities, such evasive conduct is evidence of guilt and may form a basis, in connection with other proof, from which guilt may be inferred.
>
> A defendant's knowledge may be inferred from the circumstances attendant [to] his flight.

*Commonwealth v. Thoeun Tha*, 64 A.3d 704, 714 (Pa. Super. 2013) (citing *Commonwealth v. Harvey*, 526 A.2d 330, 334 (Pa. 1987) and *Commonwealth v. Johnson*, 838 A.2d 663 (2003)) (formatting altered).

Chibundu argues the trial court erred in giving a flight instruction because, he maintains, he did not flee, but rather "voluntarily appeared in open court for an unrelated matter" and was taken into custody on an outstanding warrant in this case "without resistance." Chibundu's Brief at 30.

- 11 -

The trial court considered Chibundu's assertions and concluded they merit no relief:

Here, [Chibundu] argues that because he voluntarily appeared in court fourteen days after [] Hollimon's murder for an unrelated case, and was arrested for [the] murder at that time, a jury instruction regarding flight was inappropriate. This argument is unavailing. As noted above, [Chibundu] sent out numerous Instagram messages immediately following the murder telling people that he was on the run. Accordingly, because [Chibundu's] messages on Instagram clearly indicated that he: 1) was aware that [he] was wanted in connection with the murder of [] Hollimon, and 2) nevertheless proceeded to conceal himself from law enforcement for two weeks, a flight instruction was completely proper and the [c]ourt did not err in overruling [the] objection. . . .

Trial Court Opinion, 4/16/25, at 18-19 (internal citations omitted).

Based on our review, we conclude Chibundu has failed to show an abuse of discretion or error of law by the trial court in giving the jury a flight instruction. As the court explained, the Instagram messages show that Chibundu fled to avoid apprehension following his murder of Hollimon. **See** N.T., 7/16/24, at 204 (Chibundu indicating in an Instagram message that he was "on the run" for a "homi" and stating that he "need[s] to lay low"). That he later voluntarily appeared for court in another case at a later date on a separate occasion does not change the fact of his earlier flight, and he has advanced no authority showing that a flight instruction is inappropriate where a defendant fled on one occasion but not another. **Cf**. **Commonwealth v. Alston**, 297 A.3d 708 (Pa. Super. 2023) (unpublished memorandum at *5-*6) (holding that the trial court could give a flight jury instruction

notwithstanding that the defendant later turned himself in, and that the instruction did not prevent the jury from considering that he later turned himself in).[3]  Indeed, in giving the flight instruction, the court noted that while flight could evince consciousness of guilt, "[s]uch flight or concealment does not necessarily show consciousness of guilt in every case," rather, whether it tends to prove guilt "depends upon the facts and the circumstances of this case," and the jury could not find Chibundu guilty on the sole basis of flight. N.T., 7/17/24, at 144-45.  Thus, this issue merits no relief.

In his third issue, Chibundu maintains the evidence was insufficient to sustain his conviction for third-degree murder.  Our standard of review for sufficiency claims is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty.  Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom

_____

[3] **_See also_** Pa.R.A.P. 126(b) (non-precedential opinions filed after May 1, 2019 citable for their persuasive value).

- 13 -

overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336–37 (Pa. Super. 2019) (internal citation and indentation omitted).

Third-degree murder is "a killing with malice that is not intentional and does not qualify as second-degree murder (a criminal homicide committed while engaged as a principal or accomplice in the commission of a felony). 18 Pa.C.S.[A.] § 2502. With third-degree murder, malice is inferred from the recklessness of the defendant's conduct." *Commonwealth v. Yard*, 323 A.3d 762, 765 n.4 (Pa. 2024) (internal citation omitted). Stated otherwise by our Supreme Court: "[t]his Court has long held that malice comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (some brackets in original; emphasis omitted). Malice may be inferred from the use of a deadly weapon on a vital part of the body. *See Commonwealth v. Seibert*, 622 A.2d 361, 364 (Pa. Super. 1993). Crucially, a defendant acts with malice when he fatally shoots a victim in the back. *See Commonwealth v. Baskerville*, 681 A.2d 195, 200 (Pa. Super. 1996), *superseded by statute on other grounds*.

- 14 -

Additionally regarding self-defense, our Supreme Court has explained:

[A] claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: (a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat. [*See*, *e.g.*,] 18 Pa.C.S.A.] § 505. Although the defendant has no burden to prove self-defense . . .[,] before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. The Commonwealth sustains that burden of negation if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740–41 (Pa. 2012) (internal

quotations, footnote, and some citations omitted).

With respect to the reasonable belief requirement for self-defense, our

Supreme Court has explained:

The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Id*. at 752 (internal citation and quotations omitted). This Court has held that

where a defendant shoots an alleged aggressor while the latter is backing

- 15 -

away, the defendant cannot satisfy the objectively reasonable requirement, and, absent some evidence of his subjective beliefs at the time, he also fails the subjectively reasonable requirement. *See id*. *Accord Commonwealth v. Myrick*, 360 A.2d 598, 602 n.8 (Pa. 1976) (holding that "[i]n this case[,] appellant shot decedent, according to the most favorable testimony [for the appellant], after decedent had turned to flee. In these circumstances, the trier of fact could properly reject a claim of self-defense because appellant no longer needed to use deadly force to protect himself").

With regard to imperfect self-defense, which reduces murder to voluntary manslaughter, this Court has explained how it differs from self-defense:

> Voluntary manslaughter pursuant to 18 Pa.C.S.A. § 2503(b) is defined as:
>
> > **(b) Unreasonable belief killing justifiable.**—A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing . . ., but his belief is unreasonable.
>
> 18 Pa.C.S.A. § 2503(b) . . .. The elements necessary to establish unreasonable belief voluntary manslaughter, which is sometimes loosely referred to as "imperfect self-defense" require proof of an unreasonable belief rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S.[A.] § 505 must still be met in order to establish unreasonable belief voluntary manslaughter.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1142–43 (Pa. Super. 2009) (internal footnote and brackets, and some citations, omitted).

Chibundu maintains the evidence was insufficient to sustain his murder conviction. Chibundu, putting the evidence in the most favorable light to himself, asserts that he and Hollimon agreed to a "mutual fistfight," and then Hollimon returned with a gun, thus "assum[ing] the role of the aggressor." Chibundu's Brief at 11. Chibundu thus maintains he was justified in using self-defense. Chibundu also argues the evidence failed to establish who fired at whom; and no firearm was recovered from him, no "witness saw him discharge a weapon," and the casings did not link him to any gun. *Id*. at 12. He also argues that the amount of shots fired suggests he did not shoot Holiman because "there would be no need to continue firing at someone who was already down." *Id*. Chibundu also assails the reliability of Johnson who stated initially she had seen Chibundu shoot Hollimon and then testified differently at trial, *i.e.*, that she had not seen the shooting. *See id*. at 13.[4]

As an initial matter, we note that Chibundu conceded at trial that he shot Hollimon, and presented a self-defense theory. *See*, *e.g.*, N.T., 7/16/24, at 231 (counsel for Chibundu informing the court that the defense was "not contesting" that Chibundu was the shooter); N.T., 7/17/24, at 86, 94 (closing argument by counsel for Chibundu arguing that Chibundu fired in response to Hollimon attempting to fire his gun, and had not Chibundu "had his gun, he would be dead"). As such, Chibundu is now precluded from contesting his

_____

[4] Chibundu also challenges the admissibility of Instagram messages, which we have addressed **supra**. **See** Chibundu's Brief at 13.

identity as the one who shot Hollimon. ***See***, ***e.g.***, ***Commonwealth v. Harris***, 665 A.2d 1172, 1175 (Pa. 1995) (noting that "the defense of self-defense ***necessarily*** requires that the appellant admit that the shooting was ***intentional*** in order to protect one's self") (emphases added).

Mindful of Chibundu's concession at trial that he was the shooter, we set forth the trial court's reasoning in support of its conclusion that his sufficiency challenge is meritless, which we set forth in relevant part:

> . . . [A] physical fight broke out between Hollimon and [Chibundu]. According to [] Johnson, [] Hollimon won the fight. After the fight between [] Hollimon and [Chibundu] ended, another one of the men who arrived with [] Hollimon expressed an interest in also fighting [Chibundu]. [] Johnson told detectives that, at that point, she heard [Chibundu] tell the man he arrived with to "go get a gun." [] Johnson testified that immediately after she heard the conversation, gunshots erupted, and everyone ran back towards West Carey Street. [] Johnson testified that she saw [] Hollimon collapse while running away from the gunfire. . . . [] Johnson further testified that she did not see [] Hollimon with a gun on the night of the murder. This testimony served as compelling evidence that [Chibundu] shot [] Hollimon, who was unarmed, multiple times as he was running away.
>
> [] Johnson's testimony and statements to police regarding what occurred on the night of the murder were corroborated by Ring camera footage that was collected from the house next to [] Johnson's home . . ..
>
> [According to the video evidence, a]bout fifteen seconds after the first seven shots were fired, and after [] Hollimon collapsed, the sound of another nine shots rang out. [] Johnson could then be seen and heard on the video calling 911. This video evidence both corroborated [] Johnson's testimony, and proved that [Chibundu] shot [] Hollimon, who collapsed following the first round of seven shots, well before anyone else fired a weapon.
>
> The C[ommonwealth] also presented the testimony of Acting Chief Medical Examiner Dr. Victoria Sorokin [("Dr.

Sorokin")]. Dr. Sorokin testified that she conducted an autopsy of [] Hollimon the day after the murder, and that she observed that [] Hollimon had suffered from two gunshot wounds: ***one to the right back***, and one to the right buttock. She further testified that both the gunshot wounds to [Hollimon's] back and his buttock were entrance wounds, indicating that [] Hollimon was shot from behind, and that it was possible that [] Hollimon may have been shot while he was falling.

Additionally, Philadelphia Police Officer Marlon Robinson [("Officer Robinson")] testified that, at about 8:20 p.m. on the night of the murder, he observed a silver Kia speeding eastbound down Erie Avenue. Officer Robinson followed the Kia to the parking lot of Temple Hospital, where he discovered a shooting victim, later identified as [] Hollimon, was inside the vehicle. After getting [] Hollimon inside the hospital, Officer Robinson immediately secured the vehicle and its occupants, that is, the three men inside the Kia who traveled to the hospital with [] Hollimon. Officer Robinson testified that he did not notice any indications that any man in the vehicle had a gun, and that no guns were recovered from either the Kia or any man in the car on the night of the murder. There was also no gun recovered at the crime scene. All of this was evidence that [] Hollimon did not have a gun when he was shot by [Chibundu].

Finally, the Commonwealth presented compelling evidence of [Chibundu's] consciousness of guilt through numerous messages recovered from [his] Instagram account, "@automatic_kel[,]" [discussed above] . . ..

* * * *

All of this evidence established that [Chibundu] intentionally shot [] Hollimon, who was unarmed and running away, following a fist fight. Therefore, the Commonwealth clearly proved that [Chibundu] was guilty of third[-]degree murder and disproved [his] theory of self-defense. . . ..

Trial Court Opinion, 4/16/25, at 6-11, 12-13 (citations to the record omitted)

(emphases added).

Based on our review, the record supports the trial court's determination that the evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to sustain Chibundu's conviction for third-degree murder. We reiterate that Chibundu asserted self-defense at trial, which necessarily entailed the intentional shooting of Hollimon.[5] As such, the only question is whether the Commonwealth proved malice and disproved self-defense. The fact that Hollimon was shot in the back while fleeing proves malice, *see*, *e.g.*, *Baskerville*, 681 A.2d at 200. And the Commonwealth disproved self-defense by showing there was no evidence of record showing that Hollimon had a gun or fired at Chibundu. The evidence shows that Chibundu fired off a volley of shots at a fleeing Hollimon, which shows that Chibundu could not have believed, reasonably or unreasonably, that his life was in imminent danger and the use of deadly force was required. *See Mouzon*, 53 A.3d at 742 (killing is objectively unreasonable where the victim is backing away); *Myrick*, 360 A.2d at 602 n.8 (deadly force is not required where the victim is fleeing); *Commonwealth v. Martin*, 315 A.3d 101 (Pa. Super. 2024) (unpublished memorandum at *7) (third-degree murder conviction requires a finding of malice and voluntary manslaughter does not);

_____

[5] In any event, Chibundu's discussion with a compatriot about getting a gun following his physical altercation with Hollimon and his inculpatory Instagram messages in which he stated he was on the run for a homicide and stated he had "already did it, turkey" regarding a report of Hollimon's murder, were, together, sufficient to prove, in the light most favorable to the Commonwealth, that Chibundu fired the shots that killed Hollimon.

***Commonwealth v. Washington***, 692 A.2d 1024, 1029 (Pa. 1997) (invocation of imperfect self-defense is unavailing when the "facts are inconsistent with the conclusion that Appellant possessed a real, but mistaken, belief that his life was in imminent danger").  Because the trial evidence showed that Chibundu shot Hollimon, who was fleeing, in the back, the evidence is sufficient to show that Chibundu could not have reasonably or unreasonably believed the use of deadly force was necessary, and the same act of shooting a fleeing person establishes the requisite malice for third-degree murder.  Accordingly, Chibundu's sufficiency challenge merits no relief.

In his fourth issue, Chibundu challenges the weight of the evidence of his murder conviction.  This Court's standard of review is as follows:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court[.]
>
> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Juray***, 275 A.3d 1037, 1047 (Pa. Super. 2022) (internal citation and indentation omitted).  "Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the [fact-finder's] verdict is

so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Commonwealth v. Sanchez***, 36 A.3d 24, 39 (Pa. 2011) (internal citation and quotations omitted).

It is the exclusive province of the fact-finder to weigh inconsistencies in a witness's testimony and to make credibility determinations. ***See Commonwealth v. Izurieta***, 171 A.3d 803, 809 (Pa. Super. 2017). Indeed, this Court has explained that a new trial should not be granted because of a mere conflict in the testimony, or because a judge on the same facts would have arrived at a different conclusion. ***See Juray***, 275 A.3d at 1047. Rather,

> [a] trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

***Id***.

Chibundu argues his conviction was against the weight of the evidence. He suggests, in line with his sufficiency arguments, that Hollimon was the armed aggressor, and, therefore, Chibundu was justified in acting in self-defense. ***See*** Chibundu's Brief at 7. He also argues no video footage captured the shooting and there was a lack of forensic evidence tying him to the shooting. ***See id***. He also again maintains Johnson's statements identifying him as Hollimon's shooter were unreliable and inconsistent with her trial

testimony. *See id*. at 7-9. Chibundu lastly, again, contests the admissibility of the Instagram messages, and suggests the jury defaulted to third-degree murder as a "catch-all" notwithstanding the lack of requisite malice. *See id*. at 9-10.

The trial court considered Chibundu's assertions and concluded they merit no relief. Specifically, the court considered that Chibundu's claim is premised on his self-defense arguments, as was his sufficiency claim, and, accordingly, his convictions "in no way shocked the conscience of the [c]ourt." Trial Court Op., 4/16/25, at 14.

Following our review, we conclude Chibundu has failed to show the court abused its discretion in denying Chibundu's weight claim. As noted above, the evidence was sufficient to prove Chibundu shot and killed Hollimon. Dr. Sorokin testified that Hollimon had two gunshot wounds, one to the **right back** and the other to the right buttock. *See* N.T., 7/16/24, at 149. The cause of Hollimon's death was "[g]unshot wounds to the torso." *Id*. at 158. The trajectory of the bullet was from behind to the right and went "from the lower portion of the body into the higher portion of the body," from back to front, and it "ended up in the left neck." *Id*. at 154. Additionally, Johnson testified that after she heard gunshots, she, Hollimon and the men accompanying Hollimon, ran away in the same direction and Hollimon did not make it but rather "[he] collapsed in front of the house next door . . .." *Id*. at 56. The jury rejected Chibundu's argument, to the extent it is premised on

self-defense and imperfect self-defense, and we are not free to re-weigh the evidence. *See*, *e.g.*, *Commonwealth v. Anderson*, 323 A.3d 744, 757 (Pa. 2024) (rejecting a weight claim with respect to first-degree murder notwithstanding the absence of eyewitnesses and fingerprint/gunshot residue evidence since there was other evidence of guilt), *cert. denied sub nom. Anderson v. Pennsylvania*, 145 S.Ct. 2823 (2025). Accordingly, Chibundu's argument that the trial court abused its discretion in denying his weight claim fails.

In his final issue, Chibundu challenges the discretionary aspects of his sentence. Before proceeding to review them on the merits, we must first determine whether he has properly invoked this Court's jurisdiction over this issue. This Court has explained the relevant law as follows:

> [A]n appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by (1) filing a timely notice of appeal; (2) properly preserving the issue at sentencing or in a motion to reconsider and modify the sentence; (3) complying with Pa.R.A.P. 2119(f), which requires a separate section of the brief setting forth "a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence[;]" and (4) presenting a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Padilla-Vargas*, 204 A.3d 971, 975 (Pa. Super. 2019) (citation omitted; brackets in original); *see also* 42 Pa.C.S.A. § 9781(b).

Our review discloses Chibundu timely appealed and filed a Rule 2119(f) statement in his brief. We next look to whether Chibundu raises a substantial question. In his Rule 2119(f) statement Chibundu asserts the trial court erred

in imposing consecutive sentences "without **adequately** considering the significant overlap in the underlying conduct, [his] mitigating circumstances, or the disputed nature of the offense, which raised a plausible claim of self-defense or an uncontrolled, multi-party shooting," which resulted in an excessive sentence. Chibundu's Brief at 5 (emphasis added). However, this Court has consistently held that where an appellant presents an excessiveness argument premised on the trial court's alleged failure to adequately consider mitigating circumstances, the appellant fails to raise a substantial question. *See generally Commonwealth v. Brooks*, 305 A.3d 1023 (Pa. Super. 2023) (unpublished memorandum at *3) (holding that "Appellant failed to raise a substantial question with respect to her excessiveness claim premised on inadequate consideration of mitigating factors," and discussing authority); *accord Commonwealth v. Patterson*, 180 A.3d 1217, 1233 (Pa. Super. 2018) (noting authority holding that an excessiveness claim arising from a failure to adequately consider certain mitigating factors does not raise a substantial question); *Commonwealth v. Dortch*, 343 A.3d 298, 310 (Pa. Super. 2025) ("Likewise, a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review") (internal citation

and quotations omitted).[6]  Accordingly, we deny Chibundu's invocation of our jurisdiction over the discretionary aspects of his sentence.[7]

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2026

_____

[6] Further, our review of Chibundu's post-sentence motion reveals it is questionable whether this claim is preserved, as his assertion of excessiveness there was premised on different grounds, and he also does not appear to have raised the issue of self-defense, but rather claimed "had the decedent not come back to the area where the initial fight took place[,] he would still be alive."  Post Sentencing Motions, 11/27/24, at ¶¶ 3-4.  Accordingly, Chibundu has arguably failed to preserve this claim.  *See Padilla-Vargas*, 204 A.3d at 975.

[7] Even if Chibundu had preserved his claim and raised a substantial question, he would be due no relief.  It is well settled that a defendant is not entitled to a volume discount in the form of entitlement to concurrent rather than consecutive terms of imprisonment.  *See Commonwealth v. Lawrence*, 313 A.3d 265, 286 (Pa. Super. 2024).  Additionally, the trial court, considered a pre-sentence investigation report and mental health evaluation, as well as statements presented by Chibundu and the Commonwealth, and mitigating circumstances including Chibundu's positive effects on his family and his family support.  *See* N.T., 11/22/24, at 33-34.  To the extent Chibundu asks this Court to consider as a mitigating circumstance his self-defense claim that the jury rejected, we decline the invitation.  Lastly, as this Court has explained, the balancing of the sentencing factors is the sole province of the sentencing court, which has the opportunity to observe the defendant and all witnesses firsthand; this Court cannot reweigh sentencing factors and impose judgment in place of the sentencing court where that court was fully aware of all mitigating factors.  *See Lawrence*, 313 A.3d at 286.  Accordingly, Chibundu's claim on the merits would warrant no relief.